Elizabeth GREISZ, Plaintiff,

v.

**HOUSEHOLD BANK (ILLINOIS) and Golden Seal Heating & Air Conditioning, Inc., Defendants.**

Nos. 96 C 7091, 96 C 8155.

United States District Court,
N.D. Illinois,
Eastern Division.

March 25, 1998.

Order Modifying Opinion
on Reconsideration
Aug. 6, 1998.

Joseph A. Longo, Mt. Prospect, IL, for Elizabeth Greisz.

Mark Bruce Blocker, Theodore R. Scarborough, Jr., Sidley & Austin, Chicago, IL, for Household Bank (Illinois).

Karl Regan Fink, Timothy P. Maloney, Fitch, Even, Tabin & Flannery, Chicago, IL, Timothy E. Cronin, Bloomingdale, IL, for Golden Seal Heating & Air Conditioning, Inc.

### OPINION AND ORDER

NORGLE, District Judge.

Before the court is Defendant Household Bank's Motion for Partial Summary Judgment (Doc. No. 25–1). For the following reasons, the motion is granted in part, and denied in part.

### I. BACKGROUND

In September 1995, Plaintiff Elizabeth Greisz ("Greisz") contacted Defendant Golden Seal Heating & Air Conditioning, Inc. ("Golden Seal") about purchasing a Carrier brand gas furnace and air conditioner (the "Carrier Equipment") for the rental property she owned. After comparing prices with two other companies, Greisz decided to purchase the Carrier Equipment from Golden Seal. On October 30, 1995, Golden Seal installed the Carrier Equipment at Greisz's rental property.

To pay for the Carrier Equipment, Golden Seal invited Greisz to apply for a Carrier credit card issued by Defendant Household Bank ("Household"). By paying for the purchase on the Carrier card, Greisz would re-

ceive six months interest free. Though Greisz accepted Golden Seal's invitation, she allegedly never completed an application and did not receive the Cardholder Agreement until November 1995. On October 25, 1995, Golden Seal reported to Household a charge of $5,080 for Greisz's new account.

In early November 1995, Household sent Greisz her first monthly statement ("the November Statement") reflecting her purchase of the Carrier Equipment. The November Statement showed a purchase amount of $5,080 for "Purchase Water Heating Equip" and a minimum payment due of $104. Greisz claims that she "almost fainted" when she saw this amount because she felt it was an overcharge of the contractual price of $4,010.

Soon after receiving the November Statement from Household, Greisz telephoned Golden Seal. In the meantime, Greisz received another billing statement in December 1995. After attempting to contact Golden Seal, Greisz allegedly began to call Household's "1–800 number" listed on her billing statement. Greisz claims that Household did not tell her to dispute her bill in writing until her telephone call in February 1996.

On March 7, 1996, more than four months after Golden Seal installed the Carrier Equipment, Greisz wrote to Household for the first time complaining about her account. In that letter, Greisz stated that "the work done by Golden Seal and charged [to her account] is unsatisfactory." (Rule 12(M), Ex. 8). On March 25, 1996, Greisz sent Household a second letter. Neither of these letters made any reference to having been overcharged. To date, Greisz has not paid any amount to Household or Golden Seal.

On October 18, 1996, Greisz filed a six-count complaint on behalf of herself and others similarly situated against Golden Seal and Household in the Circuit Court of Cook County, Illinois. The complaint, as it relates to Household, alleges various violations of the Truth–in–Lending Act ("TILA"), 15 U.S.C. § 1601, et seq., as well as two derivative state law claims for violation of the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 ILCS 505/1, et seq., and the Illinois Deceptive Trade Practices Act ("IDTPA"), 815 ILCS 510/1, et seq. On December 12, 1996, Household removed the case to federal court.

Household now moves for summary judgment on Counts II, III(a), III(b), III(c), III(d), V(a), and VI(a); only Count I, alleging that Household violated 12 C.F.R. § 226.5(b) by failing to provide Greisz with an initial disclosure statement before a transaction was charged to her account, is omitted from Household's motion. In the meantime, Greisz has filed a motion for class certification, which is the basis for Count IV of her complaint.

## II. DISCUSSION

### A. Motion for Class Certification

As a preliminary matter, the court acknowledges that Federal Rule of Civil Procedure 23(c)(1) requires a court to rule on motions for class certification "as soon as practicable." Fed.R.Civ.P. 23(c)(1). Nonetheless, the Seventh Circuit has said that, in certain circumstances, it might be appropriate to rule on a motion for summary judgment before ruling on a motion for class certification. *See Cowen v. Bank United of Texas, FSB,* 70 F.3d 937, 941 (7th Cir.1995) ("It is true that Rule 23(c) of the civil rules requires certification as soon as practicable, which will usually be before the case is ripe for summary judgment. But 'usually' is not 'always,' and 'practicable' allows for wiggle room."); *see also Allen v. Aronson Furniture Co.,* 971 F.Supp. 1259, 1261 (N.D.Ill. 1997) (collecting cases that support this proposition). Such an instance would include when there is sufficient doubt regarding the likelihood of success on the merits of a plaintiff's claims. *See Allen,* 971 F.Supp. at 1261 (stating that authoritative sources indicate "that summary judgment may properly precede before a motion for class certification" where a plaintiff's claims are without merit); *see also Marx v. Centran Corp.,* 747 F.2d 1536, 1552 (6th Cir.1984) (stating that certifying a class prematurely would "promote inefficiency"). After reviewing the pleadings in the instant case, the court concludes that judicial economy would be better served by initially ruling on Household's motion for partial summary judgment.

### B. Summary Judgment Standard

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). "An issue of fact is genuine only 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Smith v. Severn*, 129 F.3d 419, 426 (7th Cir.1997) (internal quotation marks and citation omitted). The court must "view the record and all reasonable inferences drawn from the record in the light most favorable to the non-moving party." *Sample v. Aldi, Inc.*, 61 F.3d 544, 546 (7th Cir.1995). "If the non-moving party bears the burden of proof on an issue, that party may not rest on the pleadings and must instead show that there is a genuine issue of material fact." *Id.* at 547. The non-moving party, therefore, will not survive summary judgment with merely a scintilla of evidence supporting its position. *Essex v. United Parcel Serv. Inc.*, 111 F.3d 1304, 1308 (7th Cir.1997). "The question is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it so one-sided that one party must prevail as a matter of law." *Severn*, 129 F.3d at 427.

### C. TILA Overview

 TILA "is not a general prohibition of fraud in consumer transactions or even in consumer credit transactions." *Gibson v. Bob Watson Chevrolet–Geo, Inc.*, 112 F.3d 283, 285 (7th Cir.1997). Rather, the purpose of TILA is:

> to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit, and to protect the consumer against inaccurate and unfair credit billing and credit card practices.

15 U.S.C. § 1601(a); *see also McGee v. Kerr–Hickman Chrysler Plymouth*, 93 F.3d 380, 383 (7th Cir.1996); *Allen v. Beneficial Fin. Co. of Gary*, 531 F.2d 797, 800 (7th Cir.1976). At the same time, however, consumers should not misuse TILA "as an instrument of harassment and oppression against the lending industry." *Rochon v. Citicorp Mortgage, Inc.*, 94 C 3326, 1996 WL 167056, at *2 (N.D.Ill. Apr.5, 1996) (citation omitted); *see also Allen*, 531 F.2d at 801 (TILA's disclosure "requirements should not unduly burden creditors who sincerely wish to provide customers with understandable disclosure statements."); *Sharp v. Ford Motor Credit Co.*, 452 F.Supp. 465, 468 (N.D.Ill.1978), *aff'd*, 615 F.2d 423 (7th Cir.1980).

 "[I]n implementing TILA, Congress 'delegated expansive authority to the Federal Reserve Board to elaborate and expand the legal framework governing commerce in credit.'" *Alexander v. Continental Motor Werks, Inc.*, 95 C 5828, 1996 WL 79403, at *2 (N.D.Ill. Feb.16, 1996) (*quoting Ford Motor Credit Co. v. Milhollin*, 444 U.S. 555, 559–60, 100 S.Ct. 790, 63 L.Ed.2d 22 (1980)). Under this authority, "the Federal Reserve Board has issued governing regulations, commonly referred to as Regulation Z." *Id.* (*citing* 12 C.F.R. § 226.1, *et seq.*). Additionally, "[o]fficial staff opinions of the Federal Reserve Board construing TILA and Regulation Z are binding unless they are 'demonstrably irrational.'" *McGee*, 93 F.3d at 383 (*citing Ford Motor Credit Co.*, 444 U.S. at 565, 100 S.Ct. 790); *see also Alexander*, 1996 WL 79403, at *4 ("It is well settled that the Federal Reserve Board's interpretation, construction, and application of TILA and Regulation Z are to be afforded great deference....").

 In reviewing whether a creditor's disclosures comply with TILA and Regulation Z, "'strict adherence' is the rule and even the most technical disclosure violation is actionable." Alexander, 1996 WL 79403, at *3 (*citing Smith v. No. 2 Galesburg Crown Fin., Corp.*, 615 F.2d 407, 416–17 (7th Cir. 1980), *overruled on other grounds, Pridegon v. Gates Credit Union*, 683 F.2d 182, 194 (7th Cir.1982)); *accord Cowen v. Bank United of Texas, FSB*, 70 F.3d 937, 941 (7th Cir.1995) (stating that "hypertechnicality reigns"). Nonetheless, the court must balance "'competing considerations of complete disclosure ... and the need to avoid ... [informational overload].'" *Ford Motor Credit Co.*, 444 U.S. at 568, 100 S.Ct. 790 (*quoting* S.Rep. 96–73,

p. 3 (1979)) (brackets in original); *see also Wiskup v. Liberty Buick Co., Inc.*, 953 F.Supp. 958, 965 (N.D.Ill.1997). "[T]he sufficiency of TILA-mandated disclosures is to be viewed from the standpoint of an ordinary consumer, not the perspective of a Federal Reserve Board member, federal judge, or English professor." *Cemail v. Viking Dodge, Inc.*, 982 F.Supp. 1296, 1302 (N.D.Ill. 1997).

To guide creditors in their compliance with TILA, the Federal Reserve Board issues model disclosure forms. *See* § 1604(b); 12 C .F.R. § 226, Appendices (A) –(K). A creditor using these model forms "shall be deemed in compliance with the disclosure provisions" of TILA. *See* §§ 1604(b), 1640(f); *see also Gibson*, 112 F.3d at 286 ("A disclosure that complies with the [model] form is not actionable.").

With these principles in mind, the court examines, in turn, whether Household is entitled to summary judgment on each of the counts presently before the court.

### D. Household's Motion on the TILA Counts (Counts II, III(a), III(b), III(c), III(d))

At the outset, the court notes that the gravamen of Greisz's complaint is Household's alleged failure to comply with the disclosure requirements of TILA and Regulation Z in its "Cardholder Agreement" and Monthly Billing Statement ("Monthly Statement"), respectively. While referring to Household's "Cardholder Agreement," the court will determine whether it contains the disclosures that TILA (through Regulation Z)[1] requires: (1) in credit card applications (*see* 12 C.F.R. § 226.5a); and (2) in the initial disclosure statement that consumers should receive before making their first credit transaction (*see* 12 C.F.R. § 226.6). TILA allows the application disclosures and the initial disclosures to be included in one document— what is referred to here as the "Cardholder Agreement." *See* 12 C.F.R. § 226, Supp. I, com. 5a–2; com. 5a(a)(2) –3.

Additionally, the court notes that although Greisz's complaint contains only six counts, it includes numerous allegations of TILA violations within each count. For instance, although only four counts are the subject of Household's motion, these counts allege over ten different TILA violations. Greisz would be better advised to state her allegations in a more organized and clear manner to aid the court. Thus, for purposes of clarity in this opinion, the court will follow Household's chronology and classification of each count while deciding the merits of Household's motion.

#### 1. Count II

The initial allegations of Count II state that Household's Cardholder Agreement violated TILA by failing to properly disclose: (1) the annual percentage rate ("APR"), as required by § 1637(c)(1)(A)(i)(I) and 12 C.F.R. § 226.5a(b)(1); (2) the balance calculation method as required by § 1637(c)(1)(A)(IV) and 12 C.F.R. § 226.5a(b)(6); and (3) the grace period as required by § 1637(c)(1)(A)(iii)(I) and 12 C.F.R. § 226.5a(b)(5). (*See* Compl. at ¶ 6.). Household argues that Greisz's claims are "frivolous" based on a review of the Cardholder Agreement. The court agrees. A quick glance at the Cardholder Agreement reveals that it clearly discloses the APR and the grace period in compliance with TILA and Regulation Z.

■ As for the balance calculation method, if the method is one that Regulation Z recognizes, all that needs to be disclosed is the name of the method. *See* 12 C.F.R. § Supp. I, com. 5a(b)(6)(1). Here, the Cardholder Agreement discloses "Average Daily Balance," a method that Regulation Z identifies. *See* 12 C.F.R. § 226.5a(g)(1)(i). Therefore, Household's disclosure of the balance calculation method complies with TILA and Regulation Z.

■ Count II also alleges that Household's Cardholder Agreement violated TILA by failing to state: (1) that the disclosures are accurate as of the date printed; (2) the date of printing; (3) that the terms are sub-

---

1. For purposes of clarity, the court emphasizes the following: (1) TILA is located at 15 U.S.C. § 1601, *et. seq.;* (2) Regulation Z is located at 12 C.F.R. § 226.1, *et. seq.;* and (3) the Official Staff Commentary of the Federal Reserve Board to Regulation Z is located at 12 C.F.R. § 226, Supp. I.

ject to change after such date; and (4) clearly, conspicuously and in a prominent location on the solicitation a toll-free number or a mailing address, so the consumer can contact the creditor for any changes in the disclosures. (*See* Compl. at ¶ 7); *see also* § 1637(c)(3)(B), and 12 C.F.R. § 226.5a(e)(1). Household argues that Greisz's argument is meritless because the relevant disclosure in its Cardholder Agreement is identical to the disclosure used in the model form. *See* 12 C.F.R. § 226 Appendix G–11(a). The court agrees. A review of Household's disclosure reveals that it mirrors the one in the model form. Further, the disclosure is segregated from other information in a box prominently located above the caption "Your Billing Rights."

■ Finally, Greisz argues that even if Household's Cardholder Agreement states a mailing address, it must also give a local telephone number. (Compl. at ¶ 7). Greisz fails to cite any authority for her claim and the court's own research did not reveal any such requirement. *Cf.* 12 C.F.R. § 226.5a(e)(2)(ii) (requiring "a toll-free telephone number *or* a mailing address . . . .") (emphasis added), *see also* 12 C.F.R. § 226, Supp. I, com. 226.7(k)–2 (in a periodic statement "[a] telephone number *may* be included. . . . One way to ensure that the address is clear and conspicuous is to include a precautionary instruction that telephoning will not preserve the consumer's billing error rights.") (emphasis added). Therefore, the court concludes that Greisz's final claim is also meritless.

Because all of Greisz's allegations in Count II are meritless, the court grants Household's motion for summary judgment with respect to Count II.

### 2. Count III(d)

In Count III(d), Greisz alleges that Household's Cardholder Agreement: (1) requires consumers to pay disputed amounts, in violation of 12 C.F.R. § 226.13(d)(1), (Compl. at ¶ 14); (2) is ambiguous because it states that consumers are required to mail disputed amounts to Household, while discreetly stat-

ing elsewhere that consumers are allowed to withhold disputed amounts, (Compl. at ¶ 15); (3) confuses consumers because it implies that even with disputed amounts the consumer need only pay the minimum monthly payment, but also conveys that the disputed amount must be paid in full, (Compl. at ¶ 16); (4) does not disclose the words "finance charge" more clearly and conspicuously than any other terms for the average consumer, in violation of TILA, § 1632(a), (Compl. at ¶ 17); and (5) discloses the words "grace period" more clearly and conspicuously than the words "finance charge" and "annual percentage rate", in violation of § 1632(a), (Compl. at ¶ 18).[2]

### a. Requiring Payment of Disputed Amounts ¶ 14

■ Greisz's allegation that Household requires consumers to pay disputed amounts is meritless. Indeed, the Cardholder Agreement states under the caption "Your Billing Rights:" "You do not have to pay any amount in question while we are investigating . . . ." Household extracted that language directly from a model form. *See* 12 C.F.R. § 226, Appendix G–4. Therefore, the Cardholder Agreement complies with 12 C.F.R. § 226.13(d)(1). Accordingly, the court grants Household's motion for summary judgment on the allegation in paragraph 14 of Count III(d).

### b. Ambiguity Regarding the Payment of Disputed Amounts ¶¶ 15, 16

Although Household does not in fact require the payment of disputed amounts, Greisz's argument that the Cardholder Agreement is nevertheless ambiguous on this issue has merit. In support thereof, Greisz cites the following passages from the "Minimum Monthly Payment" section of the Cardholder Agreement. The first sentence of that section states that "[a]ll payments, except disputed payments, must be mailed or delivered to us at the Payment Processing Center . . . ." Immediately thereafter, however, the very next sentence states that "[d]is-

---

**2.** In her complaint, Greisz also alleged that Household failed to disclose clearly and conspicuously for the average consumer how the finance

charge is assessed. (*See* Compl. at ¶ 19). However, in her response to Household's motion, Greisz withdrew the allegation.

puted payments ... must be mailed or delivered to the Customer Service address...." A further sentence then states "[y]ou agree to pay us at least the Minimum Monthly Payment reflected on your statement." Household argues that these statements do not create an ambiguity regarding a consumer's right to withhold disputed payments. *See* 12 C.F.R. § 226.13(d)(1). Instead, Household argues that these sentences merely inform the consumer where to mail disputed amounts *if* the consumer volunteers to pay those amounts in dispute.

Household's argument is not persuasive. The standard under TILA is for creditors to disclose terms in a "meaningful sequence," *i.e.,* " 'those disclosures which are logically related must be grouped together rather than scattered through the contract.' " *Allen,* 531 F.2d at 801 (*quoting Garza v. Chicago Health Clubs, Inc.,* 347 F.Supp. 955, 961 (N.D.Ill.1972)). The statements at issue here are located in a section totally apart and beforehand the section entitled "Your Billing Rights," which tells the consumer that he is not required to pay any disputed amounts. Therefore, from the perspective of an ordinary consumer, these statements may cause a consumer to scratch his head as to whether he is required to pay the disputed amounts. *Cf. Bartlett v. Heibl,* 128 F.3d 497, 500–01 (7th Cir.1997) (holding that debt collection letter violated the Fair Debt Collection Practices Act ("FDCPA") because it did not explain apparent contradiction between one statement addressing debtor's rights and another addressing debtor's obligation to pay); *Chauncey v. JDR Recovery Corp.,* 118 F.3d 516, 518–19 (7th Cir.1997) (in an action under the FDCPA, holding that two statements in a dunning letter were contradictory because one statement required payment within thirty days while the other notified plaintiff that he had thirty days to dispute his debt); *see also Avila v. Rubin,* 84 F.3d 222, 225–26 (7th Cir.1996) (finding two statements contradictory because one informed the debtor of his validation rights while the other emphasized his obligation to pay the debt). Accordingly, the court denies Household's motion for sum-

mary judgment on Count III(d) as it relates to the allegations in paragraphs 15 and 16.

*c. Finance Charge (¶ 17)*

■ As noted above, Greisz alleges that Household's Cardholder Agreement does not disclose the words "finance charge" more clearly and conspicuously than any other terms for the average consumer. However, Regulation Z requires that the words "finance charge" must be more conspicuous than any other required disclosure *only* when those words accompany an amount or percentage rate. *See* 12 C.F.R. § 226.5(a)(2). Moreover, where the words "finance charge" accompany an amount in the Schumer Box[3], the "more conspicuous" standard does not apply. *See* 12 C.F.R. § 226, Supp. I, Appendix G, com. 5 (The disclosure of the finance charge and annual percentage rate "need not be highlighted aside from being included in the [Schumer Box], and are not required to be in any particular type size."); *see also* 12 C.F.R. § 226.5(a)(2) n. 9; 12 C.F.R. § 226, Supp. I, com. 5(a)(2)–1. Finally, Regulation Z states that "neither finance charge nor annual percentage rate need be emphasized when used as part of general informational material or in textual descriptions of other terms." 12 C.F.R. § 226, Supp. I, com. 5(a)(2)–1.

In the only place that the words "finance charge" accompany an amount in the text of the Cardholder Agreement, the disclosure is more conspicuous by its boldface and capitalization. And the "more conspicuous" standard does not apply to the disclosure of the words "finance charge" inside the Schumer Box of the Cardholder Agreement. Therefore, the Cardholder Agreement's disclosure of the words "finance charge" complies with TILA and Regulation Z. Accordingly, the court grants Household's motion for summary judgment on the allegations contained in paragraph 17 of Count III(d).

*d. Grace Period (¶ 18)*

■ Without citing any authority, Greisz alleges the Cardholder Agreement violates

---

**3.** The court's understanding of the term "Schumer Box" is that it is simply the table on credit and charge card applications and solicitations that includes the terms required in § 1637(c)(1)(A). *See* 15 U.S.C. § 1632(c). ·

TILA because the words "finance charge" and "annual percentage rates" are not as clear and conspicuous as the words "grace period" in the Schumer Box. (Compl. at ¶ 18). Greisz's claim that the words "grace period" are bolder and larger is truly stretching the disclosure requirements of TILA, beyond even hypertechnicality. Nonetheless, even assuming that the words "grace period" are more clear and conspicuous, Greisz's claim is without merit. As noted above, Regulation Z states that disclosures in the Schumer Box "need not be highlighted ... and are not required to be in any particular type size." 12 C.F.R. § 226, Supp. I, Appendix G, com. 5; *see also* 12 C.F.R. § 226.5(a)(2) n. 9; 12 C.F.R. § 226, Supp. I, com. 5(a)(2)–1. Thus, the "more conspicuous" standard does not apply to disclosures within the Schumer Box. Moreover, a review of the model Schumer Box disclosures in Regulation Z reveals that they do not disclose the terms "finance charge" and "annual percentage rate" more conspicuously than any other terms. *See* 12 C.F.R. § 226, Appendix G–10(A) and Appendix G–10(B). Accordingly, the court grants Household's motion for summary judgment on the allegations contained in paragraph 18 of Count III(d).

In sum, Household motion for summary judgment on Count III(d) is denied with respect to the allegations in paragraphs 15 and 16. However, the court grants Household's motion on Count III(d) as it relates to the allegations in paragraphs 14, 17, and 18, respectively.

### 3. Count III(a)

In Count III(a), Greisz alleges that Household's Monthly Statement fails to comply with TILA, § 1637(b)(10), and Regulation Z, 12 C.F.R. § 226.7, Supp. I, com (k)–1. These provisions require a creditor to disclose clearly and conspicuously the address that consumers should use regarding billing inquiries. A creditor may also include a telephone number for consumer's billing inquiries so long as the creditor discloses that telephoning will not preserve the consumer's billing error rights. 12 C.F.R. § 226, Supp. I, com. 226.7(k)–2.

Specifically, Greisz alleges that Household's Monthly Statement fails to state next to the telephone number that telephone inquiries will not preserve a consumer's rights. Greisz's allegation is without merit. First, a review of Household's Monthly Statement indicates that it provides a mailing address for billing inquiries in boldface type on the front side and in plain text on the reverse side. In fact, the address on the front side is located right next to the words (in boldface type): "Mail Billing Error Inquiries to . . . ." Therefore, the court finds that the address for billing inquiries complies with TILA and Regulation Z.

Nonetheless, Household chose to also provide a telephone number. Although not next to the telephone number, the notice that telephoning will not preserve the consumer's rights is on the reverse side of Household's Monthly Statement. *Cf. Schmidt v. Citibank (South Dakota) N.A.*, 677 F.Supp. 687, 696 (D.Conn.1987) (finding TILA violation where creditor failed to provide notice that telephoning will not preserve consumer's rights anywhere within periodic statement). In two different locations, the front side of the Monthly Statement adequately refers the consumer to the reverse side for further information: (1) In the middle of the page, it states "[f]or billing errors or questions please refer to the back of the statement" and provides the telephone number for consumers to call if they have any inquiries; and (2) On the bottom of the page, it states " *Notice: See Reverse Side ... for other important information." *See Gambardella v. G. Fox & Co.*, 716 F.2d 104, 111 (2nd Cir.1983) (stating that if a creditor places certain required disclosures on the reverse side of a statement, it must provide notice on the front side); *see also Belile v. Allied Medical Accts. Control Assoc. Bureaus, Inc.*, 209 B.R. 658, 663 (Bankr.E.D.Pa.1997) (no violation of the Fair Debt Collection Practices Acts ("FDCPA") where front side of debt collection letter referred debtor to reverse side for required disclosure); *cf. Riveria v. MAB Collections, Inc.*, 682 F.Supp. 174, 177 (W.D.N.Y.1988) (holding that debt collection letter violated FDCPA because its front side did not refer to validation notice on reverse side). And while neither of these notices is in boldface type or capitalized, that the consumer is referred to the reverse side twice and in two different locations is adequately effective.

*Cf. Scofield v. Telecable of Overland Park, Inc.,* 973 F.2d 874, 880–81 (10th Cir.1992) ("[A] disclosure does not fail to be 'clear and conspicuous' or meaningful simply because a superior or more detailed statement could have been provided; the question is whether the disclosure offered is sufficiently clear for purposes of the statute.").

Moreover, neither TILA nor Regulation Z require that notice to be placed in any specific spot. *See* 12 C.F.R. § 226, Supp. I, com. 5(a)–1 ("The clear and conspicuous standard requires that disclosures be in a reasonably understandable form. It does not require that disclosures be segregated from other material or located in any particular place ...."); *cf. Allen,* 531 F.2d at 802 ("The requirements of meaningful sequence cannot be applied mechanically or rigidly.... [T]he core of [TILA's] requirements [is] clarity of disclosure.").

Finally, the disclosure addressing billing inquiries on the reverse side of the Monthly Statement is identical to the one in Regulation Z's model form. *See* 12 C.F.R. § 226, Appendix G–4. Notably, even that model form places the notice that telephoning will not preserve the consumer's rights next to the address, not the phone number.

For these reasons, the court concludes that Household's Monthly Statement complies with TILA, § 1637(b)(10). Accordingly, the court grants Household's motion for summary judgment on Count III(a).

### 4. Count III(b)

In Count III(b), Greisz alleges that Household violated TILA by: (1) not placing a notice next to the address for billing inquiries on the front side that informs the consumer that only writing will preserve his rights; and (2) creating an ambiguity by providing two different addresses for consumers to write to concerning billing errors. Household argues that these allegations are groundless. The court agrees.

With respect to the first allegation, the court has already concluded above that neither TILA nor Regulation Z require the notice that telephoning will not preserve the consumer's rights be placed in any specific spot. *See* 12 C.F.R. § 226, Supp. I, com. 5(a)–1. In fact, the notice is not required at

all. *See* 12 C.F.R. § 226, Supp. I, com. 226.7(k)–2 ("A telephone number *may* be included.... One way to ensure that the address is clear and conspicuous is to include a precautionary instruction that telephoning will not preserve the consumer's billing error rights.") (emphasis added). Similarly, there is no requirement in TILA or Regulation Z that creditors disclose the converse, *i.e.,* that only writing will preserve the consumer's rights. Regardless, the address on the front side of the Monthly Statement is already clear and conspicuous, as it is in boldface type. And as explained above, Household twice refers the consumer to the reverse side of the Monthly Statement for further information. On the reverse side is the notice that telephoning will not preserve the consumer's rights. Therefore, the court concludes that Household's disclosures comply with TILA and Regulation Z. *See Allen,* supra; *see also Scofield,* 973 F.2d at 880–81.

Addressing Greisz's second allegation, the court refers to the following two addresses that Household provides for consumers' billing inquiries:

(1) P.O. Box 80058, Salinas, CA 93912–0058 (located in boldface on the front side next to the caption "Mail Billing Error Inquiries to...."); and

(2) P.O. Box 80082, Salinas, CA 93912–0082 (located in plain text on the reverse side under the caption "In Case of Errors or Questions About your Bill").

Clearly, each address has a different P.O. Box and zip code (in that each zip code corresponds to a different P.O. Box); outside of the two P.O. Boxes, however, the addresses are virtually identical. Therefore, the court finds that the mere use of two P.O. Boxes does not necessarily mean that an ambiguity exists in violation of TILA. *See Scofield,* 973 F.2d at 880–81. Indeed, regardless of whether a consumer used either address, Household would still process the billing error notice. For these reasons, the court grants Household's motion for summary judgment on Count III(b).

On a final note, the court acknowledges that, in her response to Household's motion for summary judgment, Greisz alleges for the first time several other ambiguities

relating to Household's disclosure of the address for billing inquiries. Greisz did not include these allegations in her complaint. The proper avenue for including additional allegations is to file an amended complaint; Greisz chose not to do so. Therefore, because these entirely new allegations are not properly before the court, the court will not address them.[4] *See, e.g., Auston v. Schubnell,* 116 F.3d 251, 255 (7th Cir.1997) (stating that the summary judgment stage "is too late in the day to be adding new claims"); *Teall v. City of Chicago,* 96 C 3638, 986 F.Supp. 1098, 1101 (N.D.Ill.1997) ("It is well settled within the Seventh Circuit that a plaintiff cannot amend his complaint with a later filed brief."); Fed.R.Civ.P. 15(a) ("[A] party may amend the party's pleading only by leave of court or by written consent of the adverse party....").

### 5. *Count III(c)*

In Count III(c), Greisz alleges the following: (1) After Greisz contacted Household by telephone with a billing inquiry, Household failed to investigate and resolve the alleged billing dispute within the requisite amount of time, in violation of 12 C.F.R. §§ 226.13(f) and 226.13(c)(2); (2) Household did not submit documentary evidence that Greisz had requested, in violation of 12 C.F.R. § 226, Supp. I, com. 13(f); and (3) Household did not explain to Greisz the reasons for concluding that no billing error occurred, in violation of 12 C.F.R. § 226.13(f)(1).

Household argues that Greisz's allegations are meritless because she did not send proper notice of the alleged billing error to Household in the requisite amount of time. Regulation Z requires a creditor "to comply with the appropriate resolution procedures ... within 2 complete billing cycles (but in no event later than 90 days) after receiving a billing error notice." 12 C.F.R. § 226.13(c)(1). "A billing error notice is a written notice from a consumer that: (1) Is received by a creditor ... no later than 60 days after the creditor transmitted the first periodic statement that reflects the alleged billing error...." Thus, a creditor's duty to investigate and to resolve an alleged billing

error is triggered only when the consumer provides proper written notice to the creditor within 60 days of the creditor's transmission of the first allegedly erroneous billing statement. *See Dawkins v. Sears Roebuck & Co.,* 109 F.3d 241, 243 (5th Cir.1997).

In this case, it is undisputed that: (1) Household transmitted "the first periodic statement that reflects the alleged billing error" in early November 1995; and (2) Greisz did not send a letter to Household about her bill until March 7, 1996. Therefore, Greisz did not trigger Household's duty to investigate and to resolve the alleged billing error within the requisite 60 days of Household's transmittal. Additionally, Greisz's March 7, 1996, letter to Household only complained of Golden Seal's allegedly "unsatisfactory service." As such, Greisz's letter was not a proper billing error notice because "a dispute relating to the quality of property or services that the consumer accepts" is expressly excluded from the definition of a "billing error." 12 C.F.R. § 226, Supp. I, com. 13(a)(3)–1. Because Greisz did not send a proper written billing error notice to Household within the requisite amount of time, her first allegation in Count III(c) is without merit. Accordingly, because the success of Greisz's other allegations in Count III(c) are dependent on Household's receipt of proper notice of the alleged billing error, they are moot.

Because Greisz's allegations in Count III(c) are without merit, the court grants Household's motion for summary judgment on this count.

### E. Household's Motion on the State Law Counts (V(a), VI(a))

### 1. *Count V(a)—The Illinois Consumer Fraud Act ("ICFA")*

In Count V(a), Greisz alleges that Household's alleged violations under TILA also constitute violations under the ICFA, 815 ILCS 505/1, *et seq.* Household argues that it is entitled to summary judgment on Count V(a) because: (1) compliance with TILA provides a complete defense to claims under the ICFA; and (2) Greisz has not suffered any "actual damages."

---

4. Greisz's tendency to make belated, supplemental arguments is not limited to this one instance. On two separate occasions, Greisz moved the court to allow her to cite additional authority for her response to Household's motion.

■ Unlike TILA, the ICFA "does not mandate any particular form or subject of disclosure, but rather is a general prohibition of fraud and misrepresentation." *Lanier v. Associates Finance, Inc.*, 114 Ill.2d 1, 101 Ill.Dec. 852, 499 N.E.2d 440, 447 (1986). To impose liability under the ICFA, a plaintiff must show (1) that the defendant engaged in a deceptive act or practice; (2) that the defendant intended the plaintiff to rely on the deception; and (3) that the deception occurred in the course of conduct involving trade or commerce. *Martin v. Heinold Commodities, Inc.*, 163 Ill.2d 33, 205 Ill.Dec. 443, 643 N.E.2d 734, 754 (1994). However, a "defendant's compliance with the disclosure requirements of the Truth in Lending Act is a defense to liability under the Illinois Consumer Fraud Act...." *Lanier*, 101 Ill.Dec. 852, 499 N.E.2d at 447. Therefore, to the extent that Greisz's ICFA claim is based on her meritless TILA claims, summary judgment is granted in Household's favor. The court now turns to Household's second argument to determine whether Greisz's other claims under the ICFA remain viable.

■ As of January 1, 1996, the ICFA requires that a plaintiff suffer actual damages to recover under the Act ("1996 amendment"). *See* 815 ILCS 505/10a(a) (1996); *see also Latona v. Carson Pirie Scott & Co.*, 96 C 2119, 1997 WL 109979, at *1 (N.D.Ill. March 7, 1997). However, Greisz argues that she is not required to show actual damages because much of her claim accrued in 1995, before the 1996 amendment was enacted. In *Latona*, Judge Holderman concluded that "the amendment implies that 'actual' damages were not required before 1996 because the statute previously stated only 'damages.'" *Latona*, 1997 WL 109979, at *1 (*citing* 815 ILCS 505/10(a) (1995)). And "[w]here the legislature has made a material change in a statute, the presumption is that the amendment was intended to change the law." *Id.* (*citing Bd. of Trustees of South. Ill. University v. Department of Human Rights*, 159 Ill.2d 206, 201 Ill.Dec. 96, 636 N.E.2d 528 (1994)).

Household, in turn, cites several cases interpreting the pre–1996 version of the ICFA and suggesting that the 1996 amendment was a codification of the actual damages requirement, rather than a material change in the law. *See Smith v. Prime Cable of Chicago*, 276 Ill.App.3d 843, 213 Ill.Dec. 304, 658 N.E.2d 1325, 1337 (1995) ("[A] private cause of action under the Consumer Fraud Act cannot arise absent a showing of both a violation of the Act and resultant damages."); *Duran v. Leslie Oldsmobile*, 229 Ill.App.3d 1032, 171 Ill.Dec. 835, 594 N.E.2d 1355, 1361–62 (same, and stating further that "[i]n the absence of a mental state equivalent to that of an intentional tort, we find damages may not be presumed under the Consumer Fraud Act."); *see also Dwyer v. American Express Co.*, 273 Ill.App.3d 742, 210 Ill.Dec. 375, 652 N.E.2d 1351, 1357 (1995) (rejecting a plaintiff's claim of damages under the ICFA because plaintiff failed to allege any actual harm). Based on a review of these cases, the court finds Household's argument persuasive. Accordingly, Greisz was required to show actual damages under the ICFA resulting from Household's allegedly fraudulent conduct in 1995 and 1996. Greisz has failed to do so.

■ The ICFA does not define the term "actual damages." According to Black's Law Dictionary, "actual damages" are:

> Real, substantial and just damages, or the amount awarded to a complainant in compensation for his actual and real loss or injury, as opposed on the one hand to "nominal" damages, and on the other to "exemplary" or "punitive" damages. Synonymous with "compensatory damages" and with "general damages."

Black's Law Dictionary 390 (6th Ed.1990). Furthermore, it is well established in Illinois that "'actual damages include compensation for mental suffering.'" *Pedersen v. Taylor Funeral Home*, 96 C 1588, 1997 WL 260383, at *3 (N.D.Ill. May 7, 1997) (*quoting Village of Bellwood v. Human Rights Commission*, 184 Ill.App.3d 339, 133 Ill.Dec. 810, 541 N.E.2d 1248, 1258 (1989)); *cf. Best v. Taylor Machine Works*, 179 Ill.2d 367, 228 Ill.Dec. 636, 689 N.E.2d 1057, 1067 (1997) (discussing the term "actual damages" under 735 ILCS 5/2–1115.2(a)–(c)).[5]

---

**5.** For a discussion on the meaning of "actual damages" under TILA, see *Cirone–Shadow v. Un-*

Accordingly, the only actual damage that Greisz can claim is emotional distress. However, Greisz provides absolutely no evidence to support her claim that Household caused her emotional distress. *See generally Public Fin. Corp. v. Davis,* 66 Ill.2d 85, 4 Ill.Dec. 652, 360 N.E.2d 765, 767 (1976); *Oates v. Discovery Zone,* 116 F.3d 1161, 1174 (7th Cir.1997). Moreover, any distress resulting from the "overcharge" that Greisz allegedly suffered is not attributable to Household. *See Connick v. Suzuki Motor Co., Ltd.,* 174 Ill.2d 482, 221 Ill.Dec. 389, 675 N.E.2d 584, 595 (1996) (stating that the ICFA requires the defendant's acts to be the proximate cause of plaintiff's damages.); *see also Martin,* 205 Ill.Dec. 443, 643 N.E.2d at 747 (same). Indeed, Greisz's agreement as to the price of the Carrier Equipment was only with Golden Seal (Household's Rule 12(M) Reply, Ex. C); Household merely extends credit on the amount that Golden Seal reports. Finally, the court notes that Greisz has used the Carrier Equipment for over two years without paying even the amounts not in dispute.

In sum, because Greisz does not show that she suffered any actual damages based on Household's alleged conduct, the court grants Household's motion for summary judgment on Greisz's ICFA claim under Count V(a).

### 2. Count VI(a)—The Illinois Deceptive Trade Practices Act ("IDTPA")

In Count VI(a), Greisz alleges that Household's alleged violations under TILA and the ICFA also constitute violations under the IDTPA, 815 ILCS 510/1, *et seq.* The basis for Greisz's claim under the IDTPA is the act's catch-all provision, which states: "A person engages in a deceptive trade practice when, in the course of his business, vocation or occupation he: (12) engages in any other conduct which similarly creates a likelihood of confusion or of misunderstanding". *See* 815 ILCS 510/2. By including this count, it appears that Greisz has thrown everything into her complaint, including the proverbial kitchen sink.

Household argues that Count VI(a) is meritless for two reasons: (1) Greisz does not have standing to assert a IDTPA claim because it does not allow consumers to recover money damages; and (2) Greisz is not entitled to injunctive relief because she cannot show she is likely to be harmed in the future. As a supplementary argument, Household asserts that its compliance with TILA and Regulation Z is a complete defense to a claim under the IDTPA. *See* 815 ILCS 510/4(1) ("This Act does not apply to ... conduct in compliance with ... rules of or a statute administered by a Federal ... agency."). While section 510/4(1) certainly is partially dispositive, the court will address Household's two primary arguments because they may allow the court to dispose of Greisz's claim under the IDTPA in its entirety.

First, the court agrees with Household that money damages are not available to Greisz under the IDTPA. *See Smith v. Prime Cable of Chicago,* 276 Ill. App.3d 843, 213 Ill.Dec. 304, 658 N.E.2d 1325, 1337 (1995) (noting that the IDTPA does not allow an award of damages); *see also Latona,* 1997 WL 109979, at *2. Therefore, the court turns to whether Greisz may be entitled to injunctive relief. Under the IDTPA, "injunctive relief is obtainable by an individual consumer where that consumer can allege facts that he likely would be damaged by the defendant's conduct in the future." *Id.* (citations omitted). Greisz has not done so; her sole contention that Household demands monthly that she pay the alleged "overcharge" is simply not persuasive. At this point, Greisz is fully aware of the allegedly inadequate disclosures contained in the Cardholder Agreement and Monthly Statement. *See Latona,* 1997 WL 109979, at *2 (rejecting consumer's IDTPA claim because she was fully aware of all the terms of her credit agreement). Because Greisz cannot show any likelihood of future harm resulting from Household's conduct, the court grants Household's motion for summary judgment on Count VI(a).

### III. CONCLUSION

Household's motion for summary judgment is granted on Counts II, III(a), III(b), V(a), and VI(a). As for Count III(d), Household's

*ion Nissan of Waukegan,* 955 F.Supp. 938, 943 (N.D.Ill.1997).

motion is granted in part and denied in part. Household is entitled to summary judgment on paragraphs 14, 17, and 18 of Count III(d), but the court denies Household's motion with respect to paragraphs 15 and 16.

IT IS SO ORDERED.

### OPINION and ORDER

Before the court is Defendant Household Bank's ("Household") Motion for Reconsideration (Doc. No. 74). For the following reasons, Household's motion is granted.

### I. BACKGROUND

The facts and further procedural background of this case are recited in the court's Opinion and Order of March 25, 1998. *See Greisz v. Household Bank (Illinois),* 8 F.Supp.2d 1031 (N.D.Ill.1998) ("Opinion"). A brief summary follows.

In 1995, Plaintiff Elizabeth Greisz ("Greisz") obtained a Household credit card to pay for the installation of heating and air conditioning equipment on her rental property. After a billing dispute, Greisz filed a multi-count complaint against Golden Seal Heating and Air Conditioning, Inc. ("Golden Seal") and Household. In relevant part, the complaint alleged that Household failed to comply with the disclosure requirements of the Truth–In–Lending Act ("TILA"), 15 U.S.C. § 1601, et seq., in its "Cardholder Agreement" and "Monthly Billing Statement." Household moved for summary judgment on all counts except Count I.

On March 25, 1998, the court granted in part and denied in part Household's motion for summary judgment. Specifically, the court entered summary judgment in favor of Household on Counts II, III(a), III(b), III(c), V(a), VI(a), and part of Count III(d).[1] However, the court found a genuine issue of material fact with respect to certain allegations within Count III(d). *See Greisz,* at 1038. Citing *Allen v. Beneficial Fin. Co. of Gary,* 531 F.2d 797, 801 (7th Cir.1976), the court held that there was a genuine issue as to whether Household complied with TILA's "meaningful sequence" requirement in dis-

closing that a consumer is not required to pay disputed amounts. *See id.; see generally* 12 C.F.R. § 226.13(d)(1) (discussing a consumer's right to withhold disputed amounts).

On April 7, 1998, Household filed the instant motion to reconsider, arguing that the court's reliance on the meaningful sequence requirement was erroneous. According to Household, "the meaningful sequence requirement was deleted from Regulation Z in 1981, and is no longer a part of the general disclosure requirements applicable to open-credit transactions." (Def.'s Motion at 1–2.) Household further argues that because *Allen* expressly applied the meaningful sequence requirement, it is no longer good law. Finally, Household argues that because its disclosures mirror those in Regulation Z's model form, they should be deemed in compliance with TILA's clear and conspicuous standard. *See* 15 U.S.C. § 1604(b).

### II. DISCUSSION

There is no "Motion for Reconsideration" codified in the Federal Rules of Civil Procedure. There are, however, Rules 59(e) ("Motion to Alter or Amend Judgment") and 60(b) ("Relief–From Judgment or Order" based upon "Mistakes; Inadvertence; Excusable Neglect; Newly Discovered Evidence; Fraud, Etc."). Though Household neglects to explicitly cite any rule as the basis for its motion, the fact that it challenges the merits of the court's decision means that it must fall under either Rule 59(e) or Rule 60(b). *See United States v. Deutsch,* 981 F.2d 299, 300 (7th Cir.1992).

"The only grounds for a Rule 59(e) motion ... are newly discovered evidence, an intervening change in the controlling law, and manifest error of law." *Cosgrove v. Bartolotta,* 150 F.3d 729, 1998 WL 407709, at *2 (7th Cir. July 22, 1998). Rule 59(e) "is not appropriately used to advance arguments or theories that could and should have been made before the district court rendered a judgment [citation], or to present evidence that was available earlier." *LB Credit Corp. v. Resolution Trust Corp.,* 49 F.3d 1263, 1267 (7th

---

1. As noted in the Opinion, the court was forced to examine sub-allegations within each count because Greisz's complaint was organized in what

may be described as an "everything but the kitchen sink" fashion. *See Greisz,* at 1037.

Cir.1995) (citations omitted). "The rule essentially enables a district court to correct its own errors, sparing the parties and the appellate courts the burden of unnecessary appellate proceedings." *Russell v. Delco Remy Div. of Gen. Motors Corp.*, 51 F.3d 746, 749 (7th Cir.1995). Whether to grant or deny a Rule 59(e) motion "is entrusted to the sound judgment of the district court." *Matter of Prince*, 85 F.3d 314, 324 (7th Cir.1996).

Although "Rule 60(b), to some degree, provides overlapping relief," *Russell*, 51 F.3d at 749, it is considered "an extraordinary remedy that is to be granted only in exceptional circumstances." *Provident Savings Bank v. Popovich*, 71 F.3d 696, 698 (7th Cir.1995). Rule 60(b) "enables a court to grant relief from a judgment under the particular circumstances listed in the text of the rule." *Russell*, 51 F.3d at 749; *see also* Fed. R.Civ.P. 60(b). Thus, "Rule 60(b) motions must be shaped to the specific grounds for modification [ ] listed in Rule 60(b)—they cannot be general pleas for relief." *Deutsch*, 981 F.2d at 301–02. The Seventh Circuit will not disturb a district court's ruling on a 60(b) motion unless the decision is "not just clearly incorrect, but downright unreasonable." *Cincinnati Ins. Co. v. Flanders Elec. Motor Serv., Inc.*, 131 F.3d 625, 628 (7th Cir.1997). *But cf. United States v. Indoor Cultivation Equip.*, 55 F.3d 1311, 1317 (7th Cir.1995) (stating that district courts have "less leeway" when exercising their discretion to deny motions brought under Rule 60(b)(4)).

"[T]he key factor in determining whether a 'substantive motion' is cognizable under Rule 59 or Rule 60 is its timing." *Britton v. Swift Trans. Co., Inc.*, 127 F.3d 616, 618 (7th Cir.1997) (citations omitted.). That is, the court will review a motion under Rule 59(e) if the litigant files it "no later than 10 days after entry of the judgment." Fed. R.Civ.P. 59(e). The ten day time limit is computed in accordance with Rule 6(a), meaning that "intermediate Saturdays, Sundays, and legal holidays shall be excluded in the computation." Fed.R.Civ.P. 6(a). If the litigant files his motion beyond the ten day time limit, the court reviews the motion pursuant to Rule 60(b). *See Britton*, 127 F.3d at 618; *Deutsch*, 981 F.2d at 301. A primary consequence of determining the applicable rule is the tolling of the time allowed for appeal. *Latham v. Dominick's Finer Foods*, 149 F.3d, 673, 673–74 (7th Cir.1998). "A motion pursuant to Rule 59(e) tolls the time for appeal under Rule 4(a)(4) of the Federal Rules of Appellate Procedure, a Rule 60(b) motion does not." *Mares v. Busby*, 34 F.3d 533, 535 (7th Cir.1994); *see also Russell*, 51 F.3d at 749 (stating that courts should not consider a Rule 60(b) motion if doing so would "circumvent the ordinary time limitation for filing a notice of appeal.").

Here, the clerk entered judgment on Household's motion for summary judgment on March 26, 1998, and Household later filed its motion to reconsider on April 7, 1998, within the ten day limit under Rule 6(a). Therefore, the court will review Household's motion to reconsider under Rule 59(e).

As noted above, the court's decision to deny in part Household's motion for summary judgement was based upon the Seventh Circuit's opinion in *Allen*. In *Allen*, the Seventh Circuit held that certain disclosures made by a lender failed to comply with TILA's meaningful sequence requirement. *See Allen*, 531 F.2d at 804. The *Allen* court, however, relied upon a version of Regulation Z which Congress has since repealed. The general disclosure requirement of the former version of Regulation Z provided:

> Disclosures; general rule. The disclosures required to be given by this part shall be made clearly, conspicuously, **in meaningful sequence**, in accordance with further requirements of this section....

12 C.F.R. § 226.6(a) (1968) (emphasis added).

In 1981, five years after *Allen*, Congress revised Regulation Z, including the general disclosure standard. *See* Act of March 31, 1980, Pub.L. No. 96–221, 1980 U.S.Code Congr. & Ad. News (94 Stat.) 132, 168 (1980). Since 1981, the general disclosure standard under Regulation Z no longer includes the meaningful sequence language, it instead reads:

> The creditor shall make the disclosures required by this subpart clearly and conspicuously in writing, in a form that the consumer may keep.

12 C.F.R. § 226.5(a)(1) (1997). The Federal Reserve Board Commentary on that section provides further explanation:

The clear and conspicuous standard requires that disclosures be in a reasonably understandable form. It does not require that disclosures be segregated from other material or located in any particular place on the disclosure statement. . . .

12 C.F.R. § 226, Supp. I, com. 5(a)(1); *see also* 12 C.F.R. § 226, Supp. I, com. 5a(a)(2)(1) (stating that creditors are not required to place disclosures "in any particular location"). Based on these provisions, the court agrees with Household that the "meaningful sequence" standard is no longer expressly applicable under TILA.[2] The court notes in passing, however, that remnants of the meaningful sequence standard remain within TILA. *See* 15 U.S.C. § 1604(b) (stating that certain modifications of the model form (deletions and rearrangements) are allowed except where they "affect the substance, clarity, or meaningful sequence of the disclosure.").

■ In any event, the court must still determine whether Household's disclosure regarding the right to withhold payment of disputed amounts is clear and conspicuous from the perspective of "an ordinary consumer." *See Cemail v. Viking Dodge,* 982 F.Supp. 1296, 1302 (N.D.Ill.1997). Greisz steadfastly maintains that the language in the "Minimum Monthly Payment" section of the Cardholder Agreement obscures the clear and conspicuous disclosure of a consumer's right to withhold payments of disputed amounts. A quick recap of the disclosures at issue is therefore necessary.

In the "Minimum Monthly Payment" section of the Cardholder Agreement, the first sentence states that "[a]ll payments, except disputed payments, must be mailed or delivered to us at the Payment Processing Center address shown on your monthly billing statement." The next sentence states that "[d]isputed payments including those which indicate that the payment constitutes 'payment in full' of the amount owed must be mailed or delivered to the Customer Service address shown on your monthly statement." A further sentence then states "[y]ou agree to pay us at least the Minimum Monthly Payment reflected on your statement."

In another section, however, the Cardholder Agreement states under the caption "YOUR BILLING RIGHTS—KEEP THIS NOTICE FOR FUTURE USE": "You do not have to pay any amount in question while we are investigating, but you are still obligated to pay the parts of your bill not in question."

In its earlier Opinion, the court stated that because of their separate locations within the Cardholder Agreement, "these statements may cause a consumer to scratch his head as to whether he is required to pay the disputed amounts." *Greisz,* at 1038.[3] The court compared the statements with similar language that courts found confusing in three cases under the Fair Debt Collection Practices Act ("FDCPA"): 1) *Bartlett v. Heibl,* 128 F.3d 497, 500–01 (7th Cir.1997); 2) *Chauncey v. JDR Recovery Corp.,* 118 F.3d 516, 518–19 (7th Cir.1997); and 3) *Avila v. Rubin,* 84 F.3d 222, 225–26 (7th Cir.1996).

Household argues that so long as it supplied the model form language, "YOUR BILLING RIGHTS—KEEP THIS NOTICE FOR FUTURE USE": "You do not have to pay any amount in question while we are investigating, but you are still obligated to pay the parts of your bill not in question," it satisfies the clear and conspicuous standard under TILA. *See* 12 C.F.R. § 226, Appendix G–4; *see also* 15 U.S.C. § 1640(b) *and* 12 C.F.R. § 226.13(d)(1). Household contends that the language that it provided within the "Minimum Monthly Payment" section is therefore immaterial to the court's inquiry. In light of the repeal of the meaningful sequence requirement, the court agrees. "A disclosure that complies with the model form is not actionable." *See Gibson v. Bob Watson Chevrolet-Geo, Inc.,* 112 F.3d 283, 286 (7th Cir.1997) (*citing* 15 U.S.C. §§ 1604(b), 1640(f); 12 C.F.R. § 226, Supp. I Introduc-

---

**2.** The court's research did not reveal any case addressing the repeal of the meaningful sequence requirement.

**3.** Judge Terence Evans originally coined the phrase "scratching his head" to describe an un-

sophisticated consumer's probable reaction to confusing language in a debt collection letter. *See Avila v. Rubin,* 84 F.3d 222, 226 (7th Cir. 1996).

tion para. 1). Nevertheless, the court will still address whether the language located in the "Minimum Monthly Payment" section somehow overshadows the model disclosure informing consumers that they are not required to pay disputed amounts.

Household argues that the language within the "Minimum Monthly Payment" section merely provides a separate address for disputed payments to be sent if the consumer chooses to make the payments under protest. (In some instances, it may be wise for the consumer to pay disputed amounts because if the dispute is eventually found to be entirely without merit, the creditor may assess finance charges for the time the amount was in dispute). According to Household, requiring the separate address is a practical way to segregate disputed payments because disputed payments require "special handling" until an investigation is completed. In support thereof, Household cites the Federal Reserve Board Commentary allowing creditors "to add[ ] to the required disclosures such items as contractual provisions, explanations of contract terms, state disclosures, and translations." 12 C.F.R. § 226, Supp. I, com. 5(a)(1)(1). Based on this provision and the legitimate reasons Household provides, the court finds that the language within the "Minimum Monthly Payment" section passes muster under TILA.

The court also finds that an ordinary consumer would be able to discern that the language within the "Minimum Monthly Payment" section merely notifies the consumer that there is a separate mailing address for the voluntary payment of disputed amounts. The mere fact that a superior statement could have been provided is not dispositive. *See Scofield v. Telecable of Overland Park, Inc.,* 973 F.2d 874, 880–81 (10th Cir.1992) ("[A] disclosure does not fail to be 'clear and conspicuous' or meaningful simply because a superior or more detailed statement could have been provided; the question is whether the disclosure offered is sufficiently clear for purposes of the statute."). Indeed, TILA "is not a general prohibition of fraud in consumer transactions or even in consumer credit

transactions. Its limited office is to protect consumers from being misled about the cost of credit." *Gibson,* 112 F.3d at 285. Consumers should not misuse TILA "as an instrument of harassment and oppression against the lending industry." *Rochon v. Citicorp Mortgage, Inc.,* 94 C 3326, 1996 WL 167056, at *2 (N.D.Ill. Apr.5, 1996) (citation omitted). These statements suggest that TILA imputes some degree of diligence to the ordinary consumer. Accordingly, the ordinary consumer has a minimal obligation to read the Cardholder Agreement in its entirety, including the section captioned: "YOUR BILLING RIGHTS—KEEP THIS NOTICE FOR FUTURE USE." Upon reading this section, the ordinary consumer would understand that he or she is not required to pay disputed amounts. Because Household's Cardholder Statement includes this disclosure, it does not violate TILA.

One final note is necessary. In its prior Opinion, the court compared Household's disclosures to statements found confusing in three FDCPA cases such as *Bartlett, Chauncey,* and *Avila.* Though those cases provided comparative authority under the "meaningful sequence" standard, the court now finds them distinguishable. *See, e.g., Mace v. Van Ru Credit Corp.,* 109 F.3d 338, 343–44 (7th Cir.1997) (discussing some distinctions between TILA and the FDCPA). First, unlike TILA, the FDCPA does not provide model forms as a safe harbor provision. *But cf. Bartlett,* 128 F.3d at 501–02 (providing an ideal "form letter" to guide collection agencies in their compliance with the FDCPA). Second, and perhaps most importantly, the three FDCPA cases found confusion from the perspective of "an unsophisticated consumer" rather than "an ordinary consumer," the perspective under TILA. While the ordinary consumer standard is not to be equated with "the perspective of Federal Reserve Board member, federal judge, or English professor," *Cemail,* 982 F.Supp. at 1302, it is still considered higher than the unsophisticated consumer standard, which the Seventh Circuit characterized as "low, close to the bottom of the sophistication meter." *Avila,* 84 F.3d at 226.[4]

---

**4.** Greisz never paid the amount in dispute. In fact, Greisz only recently informed the court that she paid the undisputed amount of her bill in

September 1997. Greisz did not state which address she sent her payment. Up until that time, Greisz had withheld all payments for her

### III. CONCLUSION

For the foregoing reasons, Household's motion for reconsideration is granted. The court grants Household's motion for summary judgment with respect to the allegations within ¶¶ 15 and 16 of Count III(d).

IT IS SO ORDERED.

heating and air conditioning equipment. Golden Seal has since abandoned its claim to the amount in dispute.