JOHN GROVE *et al.*, Plaintiffs-Appellees, v. CURTIS HUFFMAN, d/b/a Huffman Construction, Defendant-Appellant (Barbara Huffman, Defendant; Curtis Huffman *et al.*, d/b/a Huffman Construction, Third-Party Plaintiffs; Dean Liggett, d/b/a Liggett Plumbing and Heating, Third-Party Defendant).

Fourth District    No. 4—93—0029

Opinion filed May 25, 1994.

David E. Krchak, of Thomas, Mamer & Haughey, of Champaign, for appellant.

Michael E. Raub, of Heyl, Royster, Voelker & Allen, of Urbana, for appellees.

PRESIDING JUSTICE McCULLOUGH delivered the opinion of the court:

This is an appeal by defendant Curtis Huffman, d/b/a Huffman Construction, from a judgment of the circuit court of Vermilion County entered in favor of plaintiffs John and Karen Grove. Prior to trial, plaintiffs conceded the motion for summary judgment filed on behalf of defendant Barbara Huffman, which motion was based on the fact that Barbara was not engaged in her husband's business. The case arose from a dispute involving the construction of plaintiffs' house by defendant. No issue is raised in this appeal concerning the third-party action.

Plaintiffs' amended complaint against defendants Curtis and Barbara Huffman was framed in three counts, count I for breach of an implied warranty of habitability, count II for rescission of the contract, and count III was a claim under the Consumer Fraud and

Deceptive Business Practices Act (Act) (Ill. Rev. Stat. 1989, ch. 121¹/₂, par. 261 *et seq*.). Defendants filed a third-party complaint against Dean Liggett, d/b/a Liggett Plumbing & Heating. The first-amended third-party complaint was framed in two counts. Count I was based on a theory of breach of contract and count II was a consumer fraud action under the Act.

Defendants Curtis and Barbara Huffman, d/b/a Huffman Construction Company, filed motions to strike the jury demands in counts II and III of plaintiffs' amended complaint, to sever those actions, and for a bifurcated trial. After considering the motion and arguments of counsel, the trial court agreed to try the breach of implied warranty issue in a jury trial, and when the jury was sent out for deliberation, to continue with a bench trial on the other counts.

Following a jury trial, the jury returned a verdict for plaintiffs and against defendant in the total amount of $34,859.69. The verdict form itemized the damages as follows:

"A. The cost of repairing or replacing portions of the GROVE home and personal property damaged by flooding;                                              $ 16,669.69

B. The cost of repairs to remedy defects in construction;                                                         $ 12,190.00

C. The cost of designing and installing an adequate drainage system for the home;                             $      -0-

D. Loss of use of the home;                              $ 6,000.00[.]"

Judgment was immediately entered on the verdict on June 25, 1992. The bench trial continued with the court hearing additional evidence and written arguments of counsel being submitted to the trial court after the evidentiary phase had concluded. Count II of plaintiffs' amended complaint seeking rescission of the contract between plaintiffs and defendant was dismissed on December 18, 1992. On December 23, 1992, judgment was entered for plaintiffs and against defendant on the consumer fraud case in the amount of $12,500, plus attorney fees and costs. In a later hearing, attorney fees awarded to plaintiffs were assessed at $21,073.46.

The issues raised by defendant in this appeal relate only to the bench trial on the consumer fraud count. The issues raised by defendant are (1) whether the trial court's finding of a violation of the Act was against the manifest weight of the evidence, (2) whether the trial court improperly awarded damages in excess of those awarded by the jury in the trial on the breach of implied warranty count, and (3) whether the trial court improperly awarded attorney fees. We affirm.

The plaintiffs purchased a parcel of property on Batestown Road

in Vermilion County in the fall of 1981. During the spring of 1989, the plaintiffs met with the defendant to discuss building a house on the property. The plaintiffs showed defendant a magazine photograph of the house and the accompanying floor plan. They met with defendant on a number of other occasions to discuss building the house. The house they had built was a bi-level, with the lower living level about four feet in the ground. The lower living level contained a family room, laundry room, bathroom, John's office, and a playroom. Since the flooding, it had been used for storage. Plaintiffs questioned defendant on more than one occasion as to whether the lower level of the house would be dry. Defendant indicated in a variety of ways that the lower level of the house would be dry. John testified the defendant said he was going to put perimeter tile around the house which would go into a sump pump since the ground was lower than the roadway, he intended to have the garage floor even with the road, and he was going to slope dirt away from the house to move water away from it. Plaintiffs had as an alternate plan a two-story house which they would build if they could not build the bi-level because of water problems.

There was a dispute in the testimony as to whether defendant ever told plaintiffs that he would site the house on the ground so that the garage floor would be at the same level as the road. Plaintiffs recalled that it was an absolute promise by defendant. Defendant stated that he only advised them that he would build the garage floor as high in the ground as it was possible with the amount of fill available and consistent with the plan provided by plaintiffs. On one occasion, defendant went to look at the property after a rain and then told plaintiffs that he did not anticipate that there would be any drainage problem.

Plaintiffs were present at the property during every phase of the construction of the residence. John testified that they were present two or three times each week, and they saw the foundation for the house being poured. During contract construction, including when the hole for the foundation was dug and the concrete poured, he did not discuss with defendant the level of the house in the ground. Karen testified that she noticed the garage floor was being poured somewhat lower than the roadway, but did not discuss that with defendant at the time.

Christopher Billing, a civil engineer, indicated that the garage floor was "roughly a foot and a half" lower than the crown of the road. Billing indicated that the flooding problems were because at certain times of the year the lower living level of the house was below the level of the subsurface water table. If the lowest level of

the house was not below that level, there would not have been flooding problems. Had the house been built 12 to 16 inches higher, it would have been well above the groundwater level. His knowledge about how much higher the house should have been placed came after seeing the results of the flooding incidents. He had not made any soil investigation at the site. Billing did indicate that the problem could have been avoided if the lower level of the house had been built at the level of the roadway. In order to do that, the lower level would have to be two feet above ground level. However, he stated, "had there been a culvert or something underneath the road, then that would have been the controlling elevation."

Gibbs Taylor, a contractor retained by defendant to inspect the property, testified he noticed the garage floor was lower than the road. If he were building that house, he would have built it with the garage floor even with the road. In that area, a contractor should anticipate that it occasionally rains two to four inches at one time.

Defendant knew at the time of the original excavation work that the garage floor would be slightly lower than the road. There would have had to have been substantial fill dirt brought in to raise the level of the house. Defendant and plaintiffs had discussed initially that he would use the excavated dirt for fill. Defendant never told plaintiffs they needed additional fill. Defendant never did any estimate or provide any dollar figure as to how much would be necessary to drain the property before he could safely build a house on the property.

Plaintiffs moved into the house on December 16, 1989. The first flooding incident occurred on February 1, 1990. It flooded again on February 14 and 15, 1990. It flooded again in December 1990. The flooding caused damage to the floors and walls of the lower level as well as damage to personal property located on that level. The flooding problems reoccurred on April 18, 1992. Both plaintiffs testified they relied on defendant's statements that the house would not have water problems.

Not only does defendant argue that the trial court's finding of a violation of the Act was against the manifest weight of the evidence, but he also argues that, as a matter of law, the Act does not apply to him under the facts of this case. We disagree with both arguments. The trial court found the defendant misrepresented that (1) the garage floor would be built even with the roadway and (2) he would design and build the house so that it would not have water problems. The trial court also found "the misrepresentations were negligent rather than intentional misrepresentations of existing fact or future fact."

■ Defendant argues he is not liable because of the exception provided in section 10b(4) of the Act. This section pertains to sellers of real estate, real estate salesmen and brokers. (Ill. Rev. Stat. 1991, ch. 121¹/₂, par. 270b(4).) Defendant's argument is without merit as he is neither a seller of the real estate, nor a salesman or broker. *Sampen v. Dabrowski* (1991), 222 Ill. App. 3d 918, 925, 584 N.E.2d 493, 498, in which the court applied the Act to a real estate appraiser, did not state that negligent misrepresentations were no longer covered by the Act.

Section 2 of the Act states:

> "Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact, or the use or employment of any practice described in Section 2 of the 'Uniform Deceptive Trade Practices Act', approved August 5, 1965, in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby. In construing this section consideration shall be given to the interpretations of the Federal Trade Commission and the federal courts relating to Section 5(a) of the Federal Trade Commission Act." Ill. Rev. Stat. 1991, ch. 121¹/₂, par. 262.

In *Connor v. Merrill Lynch Realty, Inc.* (1991), 220 Ill. App. 3d 522, 530, 581 N.E.2d 196, 202, the court explained:

> "The Consumer Fraud Act is intended to provide broader consumer protection than the common law action of fraud. (*Kellerman v. Mar-Rue Realty & Builders, Inc.* (1985), 132 Ill. App. 3d 300, 306, 476 N.E.2d 1259, 1263.) A plaintiff, thus, does not have to show actual reliance or diligence in ascertaining the accuracy of the misstatements. (*Munjal v. Baird & Warner, Inc.* (1985), 138 Ill. App. 3d 172, 182, 485 N.E.2d 855, 864; *Beard v. Gress* (1980), 90 Ill. App. 3d 622, 627-28, 413 N.E.2d 448, 452.)"

Courts of this State have consistently held that the Act applies to innocent misrepresentations. *Randels v. Best Real Estate, Inc.* (1993), 243 Ill. App. 3d 801, 805, 612 N.E.2d 984, 987; *Duran v. Leslie Oldsmobile, Inc.* (1992), 229 Ill. App. 3d 1032, 1039, 594 N.E.2d 1355, 1361; *Duhl v. Nash Realty Inc.* (1981), 102 Ill. App. 3d 483, 495, 429 N.E.2d 1267, 1277; *Beard v. Gress* (1980), 90 Ill. App. 3d 622, 627-28, 413 N.E.2d 448, 452.

The application of the Act to the facts here was appropriate and correct. Nor was the trial court's decision against the manifest weight of the evidence.

"In cases where the evidence is close, such as the instant case, where findings of fact must be determined from the credibility of the witnesses, a court of review will defer to the trial court's factual findings unless they are against the manifest weight of the evidence. (*Dolins*, 107 Ill. 2d at 123-24; *Cosmopolitan National Bank v. County of Cook* (1984), 103 Ill. 2d 302, 318-19.) The court on review must not substitute its judgment for that of the trier of fact. *Cosmopolitan National Bank*, 103 Ill. 2d at 314-15." (*Kalata v. Anheuser-Busch Cos.* (1991), 144 Ill. 2d 425, 433-34, 581 N.E.2d 656, 660-61.)

The trial court's finding a violation of the Act was not against the manifest weight of the evidence.

■ The next issue is whether the trial court improperly awarded damages in excess of the jury award. The defendant argues that because the jury deciding the breach of implied warranty action awarded zero damages for the cost of designing and installing drainage, the trial judge in the action under the Act could not, on much the same evidence, award plaintiffs $12,500 for this item of damages. The defendant relies on *Pacemaker Food Stores, Inc. v. Seventh Mont Corp.* (1986), 143 Ill. App. 3d 781, 493 N.E.2d 390. In *Pacemaker Food Stores*, the plaintiff did not raise the issue of damages in its original or amended complaint and, when the trial court inquired during trial as to the matter of money damages, restated that there was no prayer or claim for money damages. The suit sought declaratory judgment and injunctive relief. The *Pacemaker Food Stores* case is clearly distinguishable from the case at bar wherein there were separate, though simultaneously conducted, trials on separate causes of action.

No reference is made to the record referring to proof of damages in order to show that the plaintiffs were adequately compensated for their loss in the breach of implied warranty action such that they were not entitled to recovery in the consumer fraud action.

On defendant's motion, the actions were tried separately, but simultaneously. There may be an integration of evidence in a joint trial. (*Colgan v. Rae-Ann Electric Co.* (1980), 91 Ill. App. 3d 386, 392, 414 N.E.2d 1343, 1347.) Defendant does not argue that the dual trial was error, but only that the award of damages in the bench trial was error.

No error occurred. In *Rubin v. Marshall Field & Co.* (1992), 232 Ill. App. 3d 522, 531, 597 N.E.2d 688, 693, plaintiff sued for breach of warranty and for consumer fraud under the Act. Both cases went to the jury. Because the consumer fraud action was not authorized to go to the jury, the judgment entered on the verdict in that action was

reversed and the cause remanded for a new trial. The appellate court stated that the trial court, on retrial, was not bound by the jury's finding "of the amount of defendant's liability if it finds defendants liable under the Act." *Rubin*, 232 Ill. App. 3d at 531, 597 N.E.2d at 693.

■ The parties also address the application of *res judicata* and collateral estoppel. Neither *res judicata* nor collateral estoppel would prevent the judgment in the consumer fraud action. (*Congregation of the Passion, Holy Cross Province v. Touche Ross & Co.* (1994), 159 Ill. 2d 137, 152; *People ex rel. Burris v. Progressive Land Developers, Inc.* (1992), 151 Ill. 2d 285, 294, 602 N.E.2d 820, 824-25; *Ballweg v. City of Springfield* (1986), 114 Ill. 2d 107, 113, 499 N.E.2d 1373, 1375; *LaSalle National Bank v. County Board of School Trustees* (1975), 61 Ill. 2d 524, 529, 337 N.E.2d 19, 22.) The consumer fraud action was separate and distinct from the matters determined by the jury. The elements and issues were not the same. Additionally, the common law and statutory claims were not filed separately, but were separate counts in the same complaint, severed on motion of defendant and essentially litigated at the same time.

In a cause of action for breach of an implied warranty of habitability, plaintiff must plead and prove that the house had a latent defect caused by improper design, material, or workmanship in its construction which rendered it unsuitable for use as a home. (*Naiditch v. Shaf Home Builders, Inc.* (1987), 160 Ill. App. 3d 245, 264, 512 N.E.2d 1027, 1038.) In relation to the facts of this case, in the consumer fraud action under the Act plaintiffs were required to prove a misrepresentation by defendant in the conduct of his trade and actual reliance thereon by plaintiffs. The issues in these cases are quite different. The jury could reasonably find that defendant was not liable to plaintiffs for the cost of designing and installing an adequate drainage system because that item of damages did not relate to a latent defect caused by improper design, material, or workmanship. Nevertheless, based on his representations that he would provide plaintiffs a house free from water problems, and would build it so the garage floor was even with the roadway, the trial court could also find defendant liable for the cost of designing and installing a new drainage system on these misrepresentations under the Act. Therefore, the trial court's award of $12,500 damages to plaintiffs on the consumer fraud action was not improper.

■ Finally, we reach the issue of attorney fees. Defendant presents three arguments. First, defendant argues that it is inappropriate to grant attorney fees for innocent violations of the Act. We disagree.

Under section 10a(c) of the Act, attorney fees may be awarded in

addition to other relief. (Ill. Rev. Stat. 1991, ch. 121½, par. 270a(c).) The awarding of such fees is a matter of discretion with the trial court. (See *Ekl v. Knecht* (1991), 223 Ill. App. 3d 234, 246, 585 N.E.2d 156, 166.) Therefore, the award of attorney fees will be overturned only if it amounted to an abuse of discretion.

In *Totz v. Continental Du Page Acura* (1992), 236 Ill. App. 3d 891, 910, 602 N.E.2d 1374, 1386-87:

> "The factors to be considered in determining the amount of attorney fees to be awarded to a prevailing party in a case brought pursuant to the Act include the time and labor required, the novelty and difficulty of the questions involved, the experience and ability of the prevailing party's attorney, the skill necessary to perform the legal services that were provided, and the benefits resulting to the prevailing party. (See *Kleidon v. Rizza Chevrolet, Inc.* (1988), 173 Ill. App. 3d 116, 124; *Warren*, 142 Ill. App. 3d at 582.) \*\*\*
>
> \*\*\* Additionally, this court has recognized that one of the purposes of allowing attorney fees to be awarded under section 10a(c) to prevailing parties is to encourage consumers to bring actions to vindicate their rights under the Act. (*Ekl*, 223 Ill. App. 3d at 245.) Without such a provision, it would be difficult for injured consumers to obtain counsel in light of the sums of money that are in dispute in most consumer fraud litigation."

Section 10a(c) of the Act applies to cases involving innocent misrepresentations. (See *Haskell v. Blumthal* (1990), 204 Ill. App. 3d 596, 602, 561 N.E.2d 1315, 1319 ("attorney fees may, at times, be awarded plaintiffs without bad faith on the part of defendants").) To hold otherwise would discourage injured parties from seeking relief under the Act and would be counterproductive to the purpose of the Act.

■ Defendant's second argument is that the award of attorney fees was excessive because it included amounts of fees incurred as a result of the jury trial. The record does not support that conclusion. Defendant admits that the trial court reduced by $2,260 the amount of fees sought by plaintiffs to reflect work due on jury instructions, the statement of the case, and one-half of the research performed. In addition, plaintiffs' attorney's affidavit indicated he used his best effort to remove from the fees shown on the affidavit all items which related solely to damages not recoverable under the Act. Defendant complains that the time spent by plaintiffs' attorney in preparation for trial was more indicative of preparation for jury trial than for preparation for a bench trial. However, the trial court found there was a "tremendous overlap in interrelationship between the breach of warranty count and the consumer fraud action." Moreover, we

find no cross-examination of plaintiffs' attorney in the transcript which supports defendant's suggestion that the time for trial preparation was required by the fact that a jury trial for breach of implied warranty was simultaneously conducted with the bench trial.

The combined trial was conducted from June 22 to June 25, 1992. After reviewing the transcript, we agree with the trial court's finding that much of the evidence presented during the jury trial was also relevant to the issues considered in the bench trial. In this case, the trial court was well aware of the complexity of the case and the work necessary to prepare for trial.

■ Last, defendant argues that the award of attorney fees must be based on the degree of success obtained by plaintiffs. Although the benefit resulting to plaintiff is a factor to be considered, we decline to adopt defendant's suggestion that attorney fees be limited to 20% of the recovery under the Act. Defendant's cited case, *Farrar v. Hobby* (1992), 506 U.S. 103, 106, 121 L. Ed. 2d 494, 499-505, 113 S. Ct. 566, 570-75, is distinguishable. There, plaintiff sued in a Federal civil rights action (42 U.S.C. §§ 1983, 1985 (1988)) to recover $17 million, but was only awarded $1 in nominal damages. To adopt defendant's suggestion would discourage plaintiffs with valid claims from pursuing relief under the Act simply because attorney fees may exceed the recovery. The award of attorney fees in this case did not amount to an abuse of discretion.

Accordingly, the judgment of the circuit court of Vermilion County is affirmed.

Affirmed.

KNECHT and LUND, JJ., concur.