1-99-3392, 1-00-0400 cons.

SIXTH DIVISION

September 21, 2001 

Nos. 1-99-3392 & 1-00-0400; Cons.

MICHAEL RUBINO,

Plaintiff-Appellant,

v.

CIRCUIT CITY STORES, INC. and FIRST NORTH AMERICAN NATIONAL BANK (FNANB),

Defendants-Appellees.

)

)

)

)

)

)

)

)

)

)

Appeal from the

Circuit Court of

Cook County.

No. 97 CH 6569

Honorable

Albert Green,

Judge Presiding.

MODIFIED OPINION UPON DENIAL OF PETITION FOR REHEARING

JUSTICE O'BRIEN delivered the opinion of the court:

Plaintiff, Michael Rubino, filed a 23-count putative class action complaint alleging defendants Circuit City Stores, Inc. (Circuit City), and First North American National Bank (FNANB) violated the disclosure requirements of the Federal Truth in Lending Act (15 U.S.C. §1601 
et seq. 
(1994)) (TILA), and certain of its associated federal regulations (12 C.F.R. ch. II, pt. 226 (1999)) (Regulation Z); the Illinois Retail Installment Sales Act (815 ILCS 405/1 
et seq.
 (West 1998)); and the Illinois Consumer Fraud and Deceptive Business Practices Act (815 ILCS 505/1 
et seq.
 (West 1998)).  The circuit court dismissed counts II through XXIII of plaintiff’s complaint pursuant to section 2-619.1 of the Code of Civil Procedure (735 ILCS 5/2-619.1 (West 1998)) and denied plaintiff’s motion to reconsider.   The circuit court conducted a bench trial on count I of plaintiff’s complaint, entered judgment in favor of defendants, and denied defendants’ subsequent request for attorney fees.

Plaintiff appeals the circuit court’s dismissal of counts II through XXIII of his complaint and its judgment in favor of defendants on count I.  Defendants cross-appeal the circuit court’s denial of their motion for attorney fees. 

First, the issue of this court’s jurisdiction over plaintiff’s appeal.  Supreme Court Rule 303 provides, in relevant part:

“Rule 303.  Appeals from Final Judgments of the Circuit Court in Civil Cases

(a) Time; Filing; Transmission of Copy.

(1) Except as provided in paragraph (b) below, the notice of appeal must be filed *** within 30 days after the entry of the final judgment appealed from, or, if a timely post-trial motion directed against the judgment is filed, whether in a jury or a nonjury case, within 30 days after the entry of the order disposing of the last pending post-judgment motion.

(2) When a timely post-judgment motion has been filed by any party, whether in a jury or a nonjury case, a notice of appeal filed before the entry of the order disposing of the last pending post-judgment motion shall have no effect and shall be withdrawn by the party who filed it, by moving for dismissal pursuant to Rule 309.  This is so whether the timely post-judgment motion was filed before or after the date on which the notice of appeal was filed. A new notice of appeal must be filed within the prescribed time measured from the entry of the order disposing of the post-judgment motion, as provided in subparagraph (a)(1) of this rule. ***

* * *

(b) Form and Contents of Notice of Appeal.

* * *

(2) It shall specify the judgment or part thereof or other orders appealed from and the relief sought from the reviewing court.

* * *

(4) The notice of appeal may be amended without leave of court within the original 30-day period to file the notice as set forth in paragraph (a) above.  Thereafter it may be amended only on motion, in the reviewing court, pursuant to paragraph (d) of this rule.  Amendments relate back to the time of the filing of the notice of appeal."  155 Ill. 2d R. 303.

Here, the circuit court entered judgment in favor of defendants on August 31, 1999.  Plaintiff  filed his initial notice of appeal on September 17, 1999, which provided, “[T]he plaintiff appeals the Circuit Court’s 7 April 1999 order granting defendant’s motion to dismiss, the 18 May 1999 order denying the plaintiff’s motion to reconsider, [and] the 31 August 1999 judgment for the defendant.”  Thereafter, defendants filed a posttrial motion for attorney fees.  The circuit court denied this motion on December 29, 1999.  Plaintiff filed a second notice of appeal on January 3, 2000, which provided, “The plaintiff previously filed a notice of appeal regarding all orders dismissing the complaint and entering judgment for the defendant.  The plaintiff incorporates by reference all such orders in the instant notice of appeal which is filed solely to protect plaintiff’s right to appeal such orders.”

Defendants argue that this court lacks jurisdiction over plaintiff’s appeal because his September 17, 1999, notice of appeal antedated the circuit court’s final order entered on December 29, 1999, and because plaintiff’s January 3, 2000, notice of appeal does not properly include the material required by Supreme Court Rule 303(b).  We disagree.  Plaintiff’s second notice of appeal was timely filed.  Moreover, it is to be liberally construed; unless the appellee is prejudiced, the appellant’s failure to comply strictly with the form of the notice is not fatal if the deficiency is one of form and not substance.  
Burtell v. First Charter Service Corp.
, 76 Ill. 2d 427, 433-34, 394 N.E.2d 380, 383 (1979).  Because plaintiff’s second notice of appeal, when considered as a whole, fairly and adequately sets out the orders and judgment complained of such that defendants were advised of the nature of the proceedings, the absence of strict technical compliance with form of notice is not fatal. 155  Ill. 2d R. 303(b)(2).  This is particularly true because the form of notice may yet be corrected by amendment. 155 Ill. 2d R. 303(b)(4).

At trial, plaintiff testified that he went to his local Circuit City store to make a purchase.  When he reached the checkout counter, the sales associate asked plaintiff if he wanted to use a Circuit City credit card.  To apply for this credit card, the sales associate asked plaintiff a number of questions regarding his income, employer and residence.  The sales associate typed this information into the computer, obtained credit approval, and rang the sale.  Plaintiff further testified that after completing his purchase, he requested a copy of the credit card 
agreement
 (not the credit card 
application
) and was told that Circuit City does not give out copies of the credit card agreement.  Plaintiff added that, given this information, he anticipated the credit card agreement would arrive in the mail with the first bill, but it did not.  Plaintiff testified he then telephoned the 1-800 telephone number listed on the credit card or bill to request a copy of the credit card agreement and was told by an unnamed corporate representative of Circuit City that Circuit City does not give the credit card agreements to its customers.

On cross-examination, plaintiff acknowledged that the sales associate asked him to sign the completed credit application and that he signed the application in two separate places.  Plaintiff's credit application was introduced into evidence by stipulation.  On the application, immediately above the second of plaintiff's two signatures, is the following language, "I have read and kept a copy of the credit card agreement and agree to its terms including a security interest in goods charged to my account."

Plaintiff further testified that the sales associate "handed [him] this application [and] he said sign at these two places 
to show that the information [I] gave is true and correct.  I went with that
."  (Emphasis added.)  He added that "[He] didn't get the chance to read all this at the store when [he] was signing it."

Circuit City's operations manager testified in rebuttal that although Circuit City does not give a copy of the credit card 
application
 to its customers, as that document is the property of FNANB, it is not the policy of Circuit City to refuse to give credit card 
agreements
 to its customers.

On appeal, plaintiff contends the circuit court erred in granting judgment for FNANB on count I of his complaint.  Count I of plaintiff's complaint alleged FNANB violated TILA, by failing to give plaintiff a copy of the credit agreement before the first transaction is made under it (citing sections  226.5(b) and 226.6(a) of Regulation Z).  We review the circuit court's decision using the manifest weight of the evidence standard. 
Cosmopolitan National Bank v. County of Cook
, 103 Ill. 2d 302, 469 N.E.2d 183 (1984).

Although defendant testified at trial that he did not receive a copy of the credit agreement before the first transaction, his testimony was contradicted by the signed application in which he  acknowledged having read and received the credit agreement.  "A person may not enter into a transaction with his eyes closed to available information and then charge that he has been deceived by another."  
Central States Joint Board v. Continental Assurance Co.
, 117 Ill. App. 3d 600, 606, 453 N.E.2d 932, 936 (1983).  It is the province of the trier of fact to resolve conflicts in the evidence, to pass upon the credibility of the witnesses, and to decide what weight should be given to the witnesses' testimony.  
Maple v. Gustafson
, 151 Ill. 2d 445, 452, 603 N.E.2d 508, 511-12 (1992). The circuit court's judgment was not against the manifest weight of the evidence.

Regarding counts II through XXIII of his complaint, plaintiff contends the circuit court erred in: (1) dismissing counts II through IX of his complaint, which alleged that FNANB violated various provisions of TILA and sought class certification on those claims; (2) dismissing counts X through XVII, which alleged that FNANB violated various Illinois business transactions acts (815 ILCS 505/1 
et seq.
 (West 1998) (Consumer Fraud and Deceptive Business Practices Act); 815 ILCS 405/1 
et seq.
 (West 1998) (Retail Installment Sales Act); 815 ILCS 205/1
 et seq. 
(West 1998)  (Interest Act); 815 ILCS 140/1
 et seq
. (West 1998) (Credit Card Issuance Act); 815 ILCS 510/1 
et seq.
 (West 1998) (Uniform Deceptive Trade Practices Act)), and sought class certification on those claims; and (3) dismissing counts XIX through XXIII, which alleged that Circuit City violated various Illinois business transactions acts (815 ILCS 205/1 
et seq.
 (West 1998) (Interest Act); 815 ILCS 505/1 
et seq.
 (West 1998) (Consumer Fraud and Deceptive Business Practices Act); and 815 ILCS 510/1 
et seq.
 (West 1998) (Uniform Deceptive Trade Practices Act)), and sought class certification on those claims.  We review the circuit court's decision 
de novo
.  
Illinois Graphics Co. v. Nickum
, 159 Ill. 2d 469, 639 N.E.2d 1282 (1994).

The Code of Civil Procedure (735 ILCS 5/1-101 
et seq.
 (West 1998)) mandates that "[a]ll pleadings shall contain a plain and concise statement of the pleader's cause of action" (735 ILCS 5/2-603(a) (West 1998)) and that "[e]ach separate cause of action upon which a separate recovery might be had shall be stated in a separate count *** and each [count] shall be divided into paragraphs numbered consecutively, each paragraph containing, as nearly as may be, a separate allegation" (735 ILCS 5/2-603(b) (West 1998)).  A complaint may be dismissed for failure to meet statutory pleading requirements.   
International Society for Krishna Consciousness, Inc. v. City of Evanston
, 89 Ill. App. 3d 701, 411 N.E.2d 1030 (1980) (action dismissed for failure to meet statutory pleading requirements), 
cert. denied
 454 U.S. 878, 70 L. Ed. 2d 188, 102 S. Ct. 358.  Moreover, a complaint may be dismissed if it is drafted in such a manner as to render any attempt to answer futile. 
City of West Chicago v. Clark
, 58 Ill. App. 3d 847, 374 N.E.2d 1277 (1978).

Here, the circuit court concluded that plaintiff's 14-page, 23-count second amended complaint, consisting of over 200 paragraphs failed to comply with section 2-603 of the Code of Civil Procedure.  We agree.

A typical example from plaintiff's complaint:

"
COUNT XX CLASS ACTION AGAINST CIRCUIT CITY

1. The plaintiff incorporates by reference paragraphs 3-6 of Count IX, Count XIX and ¶2 and 3 of Count XVI.

2. The class action is appropriate under the Illinois Consumer Fraud and Deceptive Practices Act."

Notably, count XIX, which plaintiff incorporates by reference, in turn incorporates by reference paragraphs 1 through 4 of count I.  Similarly, paragraph 2 of count XVI, "supplement[s] paragraph 2 of Count IX, to be a class member, each consumer must have been damaged."  Combining  this,  plaintiff's count XX alleges in two numbered paragraphs:

"1. [Count IX ¶3] The plaintiff allege [
sic
] on information and belief that the class is so numerous that joinder of all members is impractical.

[Count IX ¶4] The plaintiff's claim is typical of the claims of the class members.  All are based on the same legal and remedial theory.

[Count IX ¶5] The plaintiff will fairly and adequately protect the class interest.  The plaintiff have [
sic
] retained counsel to seek redress for the federal violations.  Neither the plaintiff nor his counsel has any interest which would cause them not to pursue this action vigorously.

[Count IX ¶6] It is appropriate to certify the class.  The common questions of law in [
sic
] fact of the class members predominate over questions affecting individual members.  A class action is superior to other available methods for the fair and efficient adjudication of the controversy.

[Count XIX ¶1; Count I ¶1] The plaintiff is an Illinois citizen.  The plaintiff is a card holder of the defendants' credit card.

[Count XIX ¶1; Count I ¶2] The defendant, First North American National Bank is a bank doing business in Illinois which extends credit to customers of Circuit City.

[Count XIX ¶1; Count I ¶3] The defendant, Circuit City, is a large retailer in Illinois which solicits customers daily for its credit card program in which credit is extended to its customers through the defendant/Bank.

[Count XIX ¶1; Count I ¶4] An ongoing, daily continuous agency relationship exists between the defendant/bank and Circuit City, in that Circuit City daily transacts with the defendant/Bank relating to the daily solicitation of customers under the Circuit City credit card agreement for the bank.

[Count XIX ¶2] Circuit City through its employees chose to solicit thousands of customers, including the plaintiff, to accept a credit card with the defendant/Bank.

[Count XIX ¶3] Circuit City knew or should have known that the defendant/Bank was violating both federal and Illinois law as fully set forth in counts I-XVIII and  which are incorporated by reference herein.

[Count XIX ¶4] Circuit City misled the plaintiff and failed to disclose to the plaintiff that it was soliciting the plaintiff to contract with a foreign, non-Illinois entity which was not subject to Illinois usury laws and which was violating both federal and Illinois law as fully set forth in counts I-XVIII.

[Count XIX ¶5] The defendant's unfair acts and/or deceptive acts or practices or creating the likelihood of confusion or misunderstanding violated the Illinois Consumer Fraud and Deceptive Practices Act.

[Count XVI ¶2; Count IX ¶2, as amended] The plaintiff a) brings this action on behalf of himself and others similarly situated who have received similar attached form documents from the defendant; b) A sub-class would be created for all class members who did not receive a copy of the credit card agreement.  The defendant has a policy procedure or practice of not giving consumers a copy of the credit card agreement; c) Alternatively, the defendant does not enforce any alleged policy that consumers be given a copy of the credit card agreement; d) Excluded from the class are the defendant's officers, directors of the defendants, members of the immediate family of the defendants, and any entity in which any defendant has any controlling interest and their legal representatives, heirs, successors, or assigns.  to [
sic
] be a class member, each member must have been damaged.

[Count XVI ¶3] The class action is appropriate under the Illinois Consumer Fraud and Deceptive Practices Act.

2. The class action is appropriate under the Illinois Consumer Fraud and Deceptive Practices Act." 

Thus, plaintiff’s complaint combines more than a dozen factual allegations into a single paragraph, 
i.e.
, count XX paragraph 1, rather than dividing them into separate paragraphs numbered consecutively and containing, as nearly as may be, a separate allegation as provided by statute.  In addition, the order of the incorporated paragraphs is nonsensical; some of the class certification allegations fall before the identification of the parties or the allegations of fact giving rise to plaintiff's claim, and some fall after.  Also, plaintiff's subdivision of the paragraph drawn from count XVI paragraph 2, 
i.e.
, count IX paragraph 2, into subsections "a)" through "d)" is at best confusing, and at worst incomprehensible.  It is unclear from plaintiff's attempt to "supplement[] paragraph 2 of count IX" whether plaintiff is alleging actual damages or attempting to create a subclass of individuals who can prove actual damages.  And finally, plaintiff's claim that "[t]he class  action is appropriate under the Illinois Consumer Fraud and Deceptive Practices Act" appears in both paragraph 1 and paragraph 2 of count XX. 

The complaint violates section 2-603 of the Code of Civil Procedure and makes it impossible for the defendants to understand plaintiff's allegations and adequately respond. 

Still,  plaintiff contends the circuit court erred in dismissing the complaint because it must be liberally construed and should only have been dismissed if it appeared that the plaintiff could never, under any set of facts, state a cause of action.  
Illinois Graphics Co. v. Nickum
, 159 Ill. 2d 469, 639 N.E.2d 1282 (1994).  We agree with the legal premise, but disagree that it renders the circuit court's decision error.  A court may dismiss a complaint that states a cause of action if the claim asserted against the defendant is barred by affirmative matter avoiding the legal effect of or defeating the claim.  735 ILCS 5/2-619(a)(9) (West 1998).

Despite our belief that plaintiff's complaint is undecipherable, we shall attempt to decipher the gist of what plaintiff is attempting to allege.  In counts II through VIII of his complaint, plaintiff alleged that FNANB violated various provisions of TILA by failing to give plaintiff a copy of the credit agreement before the first transaction is made under it (count I citing sections 226.5(b) and 226.6(a) of Regulation Z); failing to disclose the annual percentage rate (APR) applicable to plaintiff's credit card account (count II citing sections 226.5(b) and 226.6(a) of Regulation Z); failing to disclose the conditions under which finance charges could be imposed and any grace period which excuses the finance charge (count III citing section 1637(a) of TILA), or the method used to compute those finance charges (count IV citing section 226.6(a)(1) of Regulation Z) in its credit card agreement; failing to disclose the address to which customers were required to mail billing disputes in its credit card agreement (count V citing section 226.6(d) of Regulation Z); failing to disclose the cost of credit insurance (count VI citing section 1605(b) of TILA); and failing to disclose the balance on which finance charges would be computed and how that balance would be determined (count VII citing section 1637(b)(7) of TILA and section 226.7(e) of Regulation Z), or the address to which  customers were required to mail billing errors (count VIII citing sections 226.7(k)(1) and (k)(2) of Regulation Z), in its monthly statements.  Count IX  sought to have counts I through VIII certified as class actions against FNANB under TILA. 

A creditor's use of the Federal Reserve Board's model disclosure forms "shall be deemed in compliance with the disclosure provisions" of TILA and is an absolute defense to TILA liability.  15 U.S.C. §§ 1604(b), 1640(f) (1994).  See also 
Gibson v. Bob Watson Chevrolet, GEO, Inc.
, 112 F.3d 283, 286 (7th Cir. 1997); 12 C.F.R. §226 app. G; Comment apps. G, H(1) (1999).  Here, the credit card agreement and billing statement attached to plaintiff's complaint show that FNANB used the language of Regulation Z, its model disclosure forms and its official comments in making disclosures regarding the applicable APR (count II) (see 12 C.F.R. §226.5(a), Comment 5(a)(2) par. (2) (1999)), the grace period (count III) (see 12 C.F.R. §226.6, Comment 6(a)(1) par. (2) (1999)), the accrual and calculation of finance charges (counts IV and VII) (see 12 C.F.R. §226.7, Comments; app. G(1)(c) (1999)), the billing rights disclosure (counts V and VIII) (see 12 C.F.R. §226 apps. G(3) and G(4) (1999)), and the cost of credit insurance (count VI).  Accordingly the circuit court's dismissal of counts II through VIII was not error.

Count IX  sought to have counts I through VIII certified as class actions against FNANB under TILA.  Whether to certify a class action is a matter within the sound discretion of the trial court, and its decision will be reversed only upon a showing of a clear abuse of discretion or the application of impermissible legal criteria.  735 ILCS 5/2-801 (West 1998); 
Schlenz v. Castle
, 84 Ill. 2d 196, 203, 417 N.E.2d 1336, 1339 (1981).

A class action may not be certified unless the trial court finds:

"(1) The class is so numerous that joinder of all members is impracticable.  

(2) 
There are questions of fact or law common to the class, which common questions 
 
predominate over any questions affecting only individual members.
  

(3) The representative parties will fairly and adequately protect the interest of the class.  

(4) The class action is an appropriate method for the fair and efficient adjudication of the controversy."  (Emphasis added.)  735 ILCS 5/2-801 (West 1998).

 

Count I raises the question  whether the consumer received the credit agreement before the first transaction was made under it. Because this question requires a credibility determination as to each potential claimant and is determinate of the outcome, it predominates over class questions  and renders class certification of count I inappropriate.  Further, plaintiff's inability to state an individual cause of action against FNANB in counts II through VIII renders class certification on those counts equally inappropriate.  Accordingly,  the circuit court's dismissal of count IX was not error.  

Count X sought to have counts I through VIII certified as class actions against FNANB under the Illinois Consumer Fraud and Deceptive Business Practices Act.  Class certification of count I is inappropriate under count X for the same reason it is inappropriate under count IX.  Accordingly the circuit court's dismissal of count X was not error.  

Counts XI through XV were also directed at FNANB and alleged it violated various Illinois business transactions acts by failing to give plaintiff a copy of the credit agreement before the first transaction is made under it (count XI citing sections 25(a), 14, and 4.2(a)of the Retail Installment Sales Act); failing to disclose the APR or grace period applicable to plaintiff's credit card account (count XII citing sections 25(a)(4), 4.2, and 25(d)(3)of the Retail Installment Sales Act and count XIII citing section 6 of the Credit Card Issuance Act); failing to include the statutory anti-discrimination language, 
verbatim
, in its credit application (count XIII citing section 1b of the Credit Card Issuance Act); failing to disclose that consumers were contracting with a foreign bank not subject to Illinois usury laws (count XIV citing sections 4.2 and 4a(e) of the Interest Act); and subjecting plaintiff to an unfair venue provision in the credit agreement (count XV).  Count XVI sought to have counts IX through XV certified as class actions against FNANB under the Illinois Consumer Fraud and Deceptive Business Practices Act.  Count XVII sought to have counts X through XVI certified as class actions against FNANB under the  Illinois Uniform Deceptive Trade Practices Act.  Count XVIII sought to have counts IX through XVII certified as class actions against FNANB under the Uniform Deceptive Trade Practices Act (count XVIII).

The credit card agreement and billing statement attached to plaintiff's complaint reveal that FNANB utilized the language of Regulation Z, the model disclosure forms and official comments in making its disclosures regarding the applicable APR (count II) (see 12 C.F.R. §226.5(a), Comment 5(a)(2) par. (2) (1999)), the grace period (count III) (see 12 C.F.R. §226.6, Comment 6(a)(1) par. (2) (1999)).  Accordingly, the circuit court's dismissal of counts XI and XII was not error.

Likewise, applications conforming with the disclosure requirements of the Federal Equal Credit Opportunity Act (15 U.S.C. §1691 
et seq.
 (1994))  are deemed to be in compliance with the Credit Card Issuance Act (815 ILCS 140/1c (West 1998)).  The Federal Equal Credit Opportunity Act requires no specific anti-discrimination disclosure, but limits the scope of information that can be asked concerning the credit applicant's marital status, sex, childbearing capacity, race, color, religion and national origin.  See 12 C.F.R. §§202.5(b), (c), (d) (1999).  The credit qualifying questions, which  plaintiff's complaint alleges Circuit City's sales associate asked plaintiff, were limited to those permitted by the Federal Equal Credit Opportunity Act.  Accordingly, the circuit court's dismissal of count XIII was not error.

The Illinois Retail Installment Sales Act permits a creditor in a retail charge agreement to charge any specified rate. 815 ILCS 405/28 (West 1998).   Further, FNANB, as a national bank incorporated in the State of Georgia, may charge any rate of interest allowed by the laws of Georgia. 12 U.S.C. §85 (1994); 
Marquette National Bank v. First of Omaha Service Corp.
, 439 U.S. 299, 58 L. Ed. 2d 534, 995 S. Ct. 540 (1978).  Georgia has no restriction on the interest rate a creditor may charge on a credit card.  Ga. Code §7-5-4 (Michie 1997).  Accordingly, the circuit court's dismissal of count XIV was not error.

Finally, a forum selection clause in a contract is 
prima facie
 valid.  
Calanca v. D&S Manufacturing Co.
, 157 Ill. App. 3d 85, 510 N.E.2d 21 (1987).   In 
Calanca
, this court explained what is required to rebut a presumption of validity.  Although that explanation was within the context of proof at trial rather than within the context of allegations of a complaint, it is equally instructive regarding what plaintiff must allege in his complaint to survive a motion to dismiss.  In 
Calanca
, we stated:

"A forum selection clause in a contract is 
prima facie
 valid and should be enforced unless the opposing party shows that enforcement would be unreasonable under the circumstances. [Citations.] The opposing party must show: 

‛that trial in the contractual forum will be so gravely difficult and inconvenient that he will for all practical purposes be deprived of his day in court.  Absent that, there is no basis for concluding that it would be unfair, unjust, or unreasonable to hold that party to his bargain. [Citation.]'

Thus, in order to hold a forum selection clause unenforceable, enforcement must contravene the strong public policy of the forum or the chosen forum must be seriously inconvenient for the trial of the action. [Citation.] However, even when one party claims inconvenience, if both parties freely entered the agreement contemplating such inconvenience should there be a dispute, one party cannot successfully argue inconvenience as a reason for rendering the forum clause unenforceable. [Citations.]  A choice of forum, which is made during an arm's-length negotiation between experienced and sophisticated businessmen, should be honored by the parties and enforced by the courts, absent some ‛compelling and countervailing reason' why it should not be enforced. [Citation.]

In determining whether a forum selection clause is unreasonable, certain factors should be considered: 

‛(1) which law governs the formation and construction of the contract;  (2) the residency of the parties involved;  (3) the place of execution and/or performance of the contract;  *** (4) the location of the parties and witnesses participating in the litigation. [Citation.]  *** (5) the inconvenience to the parties of any particular location; and (6) whether the clause was equally bargained for. [Citation.]' [Citation.]" (Emphasis omitted.)  
Calanca v. D & S Manufacturing. Co.
, 157 Ill. App. 3d 85, 87-88, 510 N.E.2d 21, 23-24 (1987).

Here, to the extent count XV can be understood, it is clear that plaintiff has failed to allege sufficient facts to rebut the presumption of validity.  Accordingly, the circuit court's dismissal of count XV was not error.

Because the circuit court's dismissal of counts XI through XV of plaintiff's complaint was not error, the circuit court's dismissal of counts XVI through XVIII, which sought to pursue those same claims as class actions under the Illinois Consumer Fraud and Deceptive Business Practices Act (count XVI), the Illinois Uniform Deceptive Trade Practices Act (count XVII) and the Uniform Trade Practices Act (XVIII), was not error.

Counts XIX and XXII were directed at Circuit City.  Count XIX alleged Circuit City violated the Illinois Consumer Fraud and Deceptive Business Practices Act by failing to disclose that consumers were contracting with a foreign bank not subject to Illinois usury laws.  Count XXII alleged Circuit City violated the Illinois Interest Act by soliciting consumers to contract with a usurious lender (citing sections 4.2a and 4a(e) of the Interest Act), and receiving benefits directly or indirectly from FNANB for soliciting customers (citing section 5 of the Interest Act).  Counts XX and XXI sought to have count XIX certified as a class action against Circuit City under the Illinois Consumer Fraud and Deceptive Business Practices Act (count XX) and the Uniform Deceptive Trade Practices Act (count XXI).  Count XXIII sought to have count XXII certified as a class action against Circuit City under the Illinois Interest Act.

Because  FNANB cannot be liable for charging usurious interest rates on its installment credit accounts, Circuit City cannot be held liable for soliciting customers to enter into an installment credit agreement with FNANB.  Accordingly, the circuit court's dismissal of counts XIX through XXIII was not error.

For the foregoing reasons, the circuit court's judgment in favor of defendants on count I of plaintiff's complaint and the circuit court's dismissal of counts II through XXIII of plaintiff's complaint are affirmed.

On cross-appeal, defendants contend the circuit court erred in denying their request for attorney fees pursuant to Supreme Court Rule 137 and section 10a(c) of the Illinois Consumer Fraud and Deceptive Business Practices Act. The circuit court's decision to deny attorney fees will not be disturbed absent an abuse of discretion. 
Technology Innovation Center, Inc. v. Advanced Multiuser Technologies Corp.
, 315 Ill. App. 3d 238 (2000).

Supreme Court Rule 137 provides "[i]f a pleading, motion, or other paper is signed in violation of this rule, the court, upon motion or upon its own initiative, may impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay the other party or parties the amount of reasonable expenses incurred because of the filing of the pleading, motion or other paper, including a reasonable attorney fee."  134 Ill. 2d R. 137.   It allows a court to impose sanctions against a party or counsel who files a pleading or motion which is not well grounded in fact, is not warranted by existing law or a good-faith argument for the extension, modification , or reversal of existing law, or is interposed for any improper purpose.  134 Ill. 2d R. 137.  Because the rule is penal in nature it must be strictly construed.  
In re Estate of Wernick
, 127 Ill. 2d 61, 77, 535 N.E.2d 876, 883 (1989).  The standard for evaluating a party's conduct under this rule is one of reasonableness under the circumstances existing at the time of the filing.  
Lewy v. Koeckritz International, Inc.
, 211 Ill. App. 3d 330, 334, 570 N.E.2d  361, 364-65 (1991).  The purpose of Rule 137 is not to penalize litigants merely because they were not successful in the litigation (
Chicago Title & Trust Co. v. Anderson
, 177 Ill. App. 3d 615, 621-22, 532 N.E.2d 595, 599 (1988)), and sanctions are not warranted simply because the facts ultimately determined are adverse to those set forth in the pleadings (
Schnack v. Crumley
, 103 Ill. App. 3d 1000, 1005, 431 N.E.2d 1364, 1367 (1982)). 

Because the circuit court considered the allegations in count I of plaintiff's complaint sufficient to warrant a trial, it did not abuse its discretion in refusing to grant defendants' request for attorney fees pursuant to Rule 137 in relation to count I.  
However, because the circuit court dismissed counts II through XXIII of plaintiff's complaint for failure to state a cause of action, and for violating section 2-603(b) of the Code of Civil Procedure, further analysis is required to determine whether Rule 137 sanctions were warranted in relation to counts II through XXIII.  Generally, the party requesting sanctions must show that the opposing party made assertions of fact which were untrue and made without reasonable cause.  
Johnson v. LaGrange  State Bank
, 73 Ill. 2d 342, 366, 383 N.E.2d 185, 196 (1978).  This requirement is satisfied where the record discloses that the attorney was aware that the defendants could assert an affirmative defense, but filed a complaint anyway.  
Jurgensen v. Haslinger
, 295 Ill. App. 3d 139, 692 N.E.2d 347 (1998).  

Here, the record reveals not only that counts II through XXIII of plaintiff's complaint were not well grounded in fact, but also that plaintiff's attorney was aware that defendants could assert multiple affirmative defenses based upon the model disclosure forms and official comments and upon plaintiff's inability to draft a complaint in compliance with section 5-603(b) of the Code of Civil Procedure (735 ILCS 5/2-603(b) (West 1998)).  The record refers to at least six other cases, all of which were filed by plaintiff's counsel and each of which was essentially identical to the complaint at issue here.  In each such complaint, the plaintiff complained that the various defendants violated TILA and Illinois Consumer Fraud and Deceptive Business Practices Act by failing to clearly and conspicuously disclose the applicable credit terms.  More importantly, each such complaint was dismissed.  See Boesch v. Best Buy, Inc., No. 96 CH 3637 (Cir. Ct. Cook Co.) (December 27, 1996, order dismissing case), aff'd, No. 1-97-0476 (1998) (unpublished order under Supreme Court Rule 23); Green v. The Limited, No. 95 M3 5136 (Municipal Ct. Cook Co.) (August 21, 1996, order and opinion dismissing case); Latona v. Service Merchandise Co., No. 96 CH 2438 (Cir. Ct. Cook Co.) (November 8, 1996, order dismissing case);  Latona v. Carson Pirie Scott & Co., No. 96 C 2119 (N.D. Ill.) (March 7, 1997, order granting partial summary judgment to defendants on counts V and VI and plaintiff's motion for class certification); 
Greisz v. Household Bank
, 8 F. Supp.  2d 1031 (N.D. Ill. 1998), 
aff'd
, 176 F.3d 1012 (7th Cir. 1999) (March 25, 1998, order dismissing case in relevant part); Campobasso v. Circuit City Stores, Inc., No. 95 M 35153 (Municipal Ct. Chicago) 
transferred to chancery
 (May 5, 1998, order dismissing case). 

Notably, in Campobasso, the plaintiff's attorney amended the complaint four times.  Following the fourth amendment, the circuit court dismissed the case stating at various times:

"THE COURT: Mr. Longo, you've got a complaint here that is over 25 pages long.  I certainly don't find any criticism with people filing long complaints, but this is just as repetitious [as] repetitious can be.  You keep saying the same thing over and over and over again.  It isn't necessary.  Now if you don't know how to file a complaint, get somebody who does.  I'm not going to tolerate it again.  I'm telling you this now.  The next time if you don't come forward with a complaint that I can interpret, I'm going to dismiss the case and maybe we should decide whether the Appellate court thinks its good or not because I don't think that this is a complaint that comports with what is intended by the Code of Civil Procedure.  I think it's totally unfair to this Defendant to respond continuously and take the expenses of responding to this kind of a complaint.  You've had 5 chances.  This is your 4th-amended complaint.  I frankly don't know what you're trying to do.  I don't like to assume the words of your Defendant, but frankly this is very, very difficult to understand.

* * *

THE COURT: ***  I think there is just a limit as to how much I can expect this Defendant to have to plead to your complaints especially on such rudimentary and fundamental aspects as not putting more than one cause of action into a complaint.

* * *

THE COURT: You either don't know how to plead a complaint or you're trying to harass this Defendant.  I don't know which.

* * *

THE COURT: I tell you, sir, I don't mean to be insulting, but you never have to worry about a complaint that's a model [of perfection].  Don't you ever worry about that.  You won't ever have to worry about prepping a complaint that's a model.  This is a model of confusion. ***

*** I think this is the louisiest complaint I ever read.  Now that's a terrible thing for me to say, but you know something?  I've been on this bench for over 20 years, and I haven't ever seen a worst [
sic
] complaint than this ***.  

*** It's verbose; it's repetitious; it's got a lot of junk in it.

* * *

THE COURT: *** I just don't understand this complaint, and I've been over it time and time again.

* * *

THE COURT: But here's a case that started out in the municipal division, 95 M3.  You filed 5 complaints, and we're no further today than we were when you filed this in Municipal 3.

 * * *

THE COURT: *** I think that you have had an occasion here to file 5 complaints and you haven't done it.  You haven't, in my opinion, stated an adequate cause of action.  Your complaint is, in my opinion, totally unintelligible.  I think that you have violated the most basic principles of pleading."

Following the circuit court's dismissal of 
Campobasso v. Circuit City Stores, Inc.
, and its comments regarding the unacceptable quality of the complaint, plaintiff's counsel promptly filed a nearly identical complaint on behalf of Rubino against the same defendants.  The case was assigned to a different circuit court judge who permitted plaintiff's counsel two additional opportunities to amend.  The last of these amendments is the second amended complaint at issue here.  As previously discussed, counts II through XXIII of this complaint violated section 2-603(b) of the Code of Civil Procedure and  failed to state a cause of action.  Thus, in a total of eight attempts, plaintiff's counsel has been unable to draft a complaint that complies with section 2-603(b) of the Code of Civil Procedure and is well grounded in fact and law. 

Defendants' exhibits to their motion for sanctions clearly establish that plaintiff's counsel was aware that his complaints were not well grounded in fact nor warranted by existing law, both in form and substance, such that plaintiff's counsel's conduct was unreasonable when he filed yet another on behalf of Rubino.   
Lewy v. Koeckritz International, Inc.
, 211 Ill. App. 3d 330, 334, 570 N.E.2d  361, 364 (1991);  
Jurgensen v. Haslinger
, 295 Ill. App. 3d 139, 692 N.E.2d 347 (1998).  Thus, the discretion and kindness of the circuit court notwithstanding, defendants are entitled to Rule 137 sanctions against plaintiff's counsel for the costs and attorney fees defendants incurred in defending counts II through XXIII of plaintiff's complaint.  Because it appears that plaintiff's counsel was responsible for the pleadings, plaintiff's counsel should bear defendants' attorney fees and costs personally.

Next, we consider whether the circuit court erred in refusing to grant defendants' request for attorney fees pursuant to section 10a(c) of the Illinois Consumer Fraud and Deceptive Business Practices Act.  Section 10a(c) provides that the court may award “reasonable attorney’s fees and costs to the prevailing party.” 815 ILCS 505/10a(c) (West 1998).  Because count I of plaintiff’s complaint was brought under TILA, 
the circuit court did not err in denying defendants’ request for attorney fees pursuant to section 10a(c) of the Illinois Consumer Fraud and Deceptive Business Practices Act in relation thereto.  Further, because 
we conclude defendants are entitled to attorney fees pursuant to Rule 137 in relation to counts II through XXIII, we need not consider whether the circuit court erred in refusing to grant defendants’ request for attorney fees pursuant to section 10a(c) of the Illinois Consumer Fraud and Deceptive Business Practices Act on those counts.

Concise and clear pleadings are vital to the administration of justice.  No party should be called upon to answer or defend the redundant, jumbled and cryptic pleadings filed by plaintiff's counsel, and no court should be forced to expend so much time and energy attempting to decipher them. 

For the foregoing reasons, we affirm the decision of the circuit court in favor of defendants on count I of plaintiff's complaint and affirm the decision of the circuit court dismissing counts II through XXIII; we affirm the circuit court’s denial of defendants’ motion for attorney fees on count I; 
we
 reverse the circuit court's denial of defendants' motion for attorney fees on counts II through XXIII, and remand the matter for further proceedings not inconsistent with this opinion.

Affirmed in part and reversed in part; cause remanded for further proceedings not inconsistent with this opinion.

BUCKLEY, J., concurs

CAMPBELL, P.J., specially concurs in part, dissents in part.

PRESIDING JUSTICE CAMPBELL, modified special concurrence and partial dissent:

Although I join the modified majority opinion insofar as it affirms the trial court's judg­ment in favor of the defendants on the Truth In Lending Act (TILA) claim, I disagree with this court's award of attorney fees as Rule 137 sanctions against plaintiff's counsel personally.  The decision of whether to award attorney fees will not be overturned absent an abuse of the trial court's discretion, even if the decision would have been different had it been decided originally by this court.  
Edwards v. Estate of Harrison
, 235 Ill. App. 3d 213, 221, 601 N.E.2d 862, 867 (1992).  In this case, the majority reverses, "the discretion and kindness of the circuit court notwithstanding," which directly contravenes the standard of review.  

The majority opinion imposes Rule 137 sanctions, asserting that counts II through XXIII of plaintiff's complaint were not well grounded in fact.  However, the majority opinion does not identify any untrue statement of fact made without reasonable cause.  

The majority opinion also asserts that "plaintiff's attorney was aware that defendants could assert multiple defenses based upon the model disclosure forms and official comments ***."  The majority opinion cites 
Jurgensen v. Haslinger
, 295 Ill. App. 3d 139, 692 N.E.2d 347 (1998), to claim that Rule 137 sanctions are warranted "where the record discloses that the attorney was aware that the defendants could assert an affirmative defense, but filed a complaint anyway."  My reading of 
Jurgensen
 suggests that sanctions are not warranted where the attorney could have entertained a reasonable belief that some exception or nuance in the law might apply to the affirmative defense.  
Jurgensen
, 295 Ill. App. 3d at 144-45, 692 N.E.2d at 352.
(footnote: 1)  The issue is whether, in light of a possible defense, the claim is not warranted by existing law or a good-faith argument for the extension, modification or reversal of existing law.

The majority opinion suggests that a creditor's compliance with the disclosure require­ments of TILA is always a defense to liability under the Illinois Consumer Fraud and Deceptive Business Practices Act.  However, this is not always the case.  See, 
e.g.
,  
Bernhauser v. Glen Ellyn Dodge, Inc.
, 288 Ill. App. 3d 984, 991-92, 683 N.E.2d 1194, 1200-01 (1997);
 
Grimaldi v. Webb
, 282 Ill. App. 3d 174, 180-81, 668 N.E.2d 39, 43 (1996).  Thus, counsel had reason to argue that the defense would not apply.

Regarding the application of the defense in this case, the majority opinion concludes that defendants complied with the TILA because the credit agreement and billing statement used language from Regulation Z, the Federal Reserve Board's model disclosure forms and official comments.  It is thus undisputed that the credit agreement and billing statement here did 
not
 mirror the model disclosure forms themselves, which is the basis of the claimed defense.
(footnote: 2)  Creditors are not required to use the exact language of the model forms to escape statutory liability.  
E.g.
, 
In re Porter
, 961 F.2d 1066 1076 (3rd Cir. 1992).  However, when a creditor departs from the model forms, the defense is not clear and thus not a basis for imposing sanctions.

The majority opinion is also based "upon plaintiff's inability to draft a complaint in compliance with section 2-603(b) of the Code of Civil Procedure ***."  The pleading at issue was undoubtedly prolix and poorly drafted.  However, the imposition of Rule 137 sanctions on this ground is unprecedented.  Moreover, defendants, the trial court and this court examined the legal sufficiency of each dismissed count, showing that the pleading, while poorly drafted, was answer­able.  More significantly, the fact that a complaint is poorly drafted does not automatically mean that it is not well grounded in fact, not warranted by existing law or that there is no good-faith argument for the extension, modification or reversal of existing law.

Indeed, the majority opinion does not attempt to show that plaintiff's counsel had no good-faith argument for the extension, modification or reversal of existing law.
(footnote: 3)
 The majority opinion refers to other similar cases filed by plaintiff's counsel that were ostensibly dismissed.  This aspect of the majority opinion unjustifiably presupposes that the other cases are probative not only of whether such claims are warranted by existing law, but also of  whether there is no good-faith argument for the extension, modification or reversal of existing law.  Moreover, while the record on appeal contains various orders and transcripts from said cases, it does not include the complaints or the documents underlying them, precluding the conclusion that they are "essentially identical."  The record also shows that most of the orders cited did not address the merits of all of the claims presented in those cases or in this one.
(footnote: 4)
 The petition for rehearing discusses 
Nazos & Griesz v. Montgomery Ward & Co.
, No. 92-CH-8000 (Cir. Ct. Cook Co.), one of the cases defendant alleged was similar to this case.  Plaintiff's counsel has submitted an affidavit, along with a portion of the a joint motion in support of final approval of a class settlement, showing that 
Nazos & Griesz
 settled TILA claims on terms providing for payments to the class representatives, attorney fees and donations to various public-interest agencies in an apparent total amount of $175,000.  While not an admission of liability, the settlement may be probative of whether such class actions are unwarranted by existing law and whether plaintiff's counsel was acting in bad faith.

Finally, defendants' brief did not specifically argue that this court should impose Rule 137 sanctions upon plaintiff's counsel personally.  Indeed, the record shows that defendants' motion for attorney fees was premised almost entirely on section 10a(c) of the Illinois Consumer Fraud and Deceptive Business Practices Act; Rule 137 is mentioned once in passing without citations to authority.  Although this court is not bound by the rules of waiver, they ought to be considered before overriding the discretion of the trial court.  Given the record, plaintiff's counsel is not a particularly sympathetic figure, but that is not a basis for imposing Rule 137 sanctions.  Consumer protection legislation exists to protect vulnerable consumers against  unfair and deceptive practices, particularly in regard to credit and other financial transactions.  The unsupported award of attorney fees, particularly when imposed as a sanction against counsel, will have a chilling effect on the filing of consumer actions and defeat the purpose of consumer protection legislation.  See 
Casey v. Jerry Yusim Nissan, Inc.
, 296 Ill. App. 3d 102, 107, 694 N.E.2d 206, 209 (1998).  Indeed, one of the purposes of allowing attorney fees to be awarded for consumer actions is to encourage consumers to file actions to vindicate their rights; without such a provision it would be difficult for injured consumers to obtain counsel in light of the sums of money that are in dispute in most consumer litigation.  
Grove v. Huffman
, 262 Ill. App. 3d 531, 539, 634 N.E.2d 1184, 1190 (1994).  The trial court did not abuse its discretion in refusing to impose Rule 137 sanctions.

For these reasons, I respectfully dissent in part.

FOOTNOTES
1:  See also 
Rein v. David A. Noyes and Co.
, 271 Ill. App. 3d 768, 649 N.E.2d 64 (1995), 
aff'd
 172 Ill. 2d 325, 665 N.E.2d 1199 (1996) (trial court did not abuse discretion by denying  sanctions, even though plaintiffs had filed some claims which were barred by 
res judicata
 or prohibition against splitting cause of action).

2:  For example, the record shows that the language in the credit agreement and billing statements regarding the calculation of finance charges is significantly different and far less clear than the model clauses appearing at 12 C.F.R. § 226, App. G-1 (1999).  Indeed, the differences are such that it is debatable whether count IV should have been dismissed under section 2-615, let alone form the basis for Rule 137 sanctions.

3:  Given the majority opinion's reliance on defendants' supposed compliance with the TILA as a basis for dismissing claims under the TILA and the Illinois Consumer Fraud and Deceptive Business Practices Act and ultimately imposing Rule 137 sanctions on plaintiff's counsel for filing them, it might be useful to examine plaintiff's counsel's argument on this point.  

The record shows that plaintiff's counsel argued that the adequacy of the disclosures under the TILA should be judged by reference to the "unsophisticated consumer."  The trial court dismissed in part by applying the standard of the "average consumer" that appears in federal case law.  
E.g.
, 
Cemail v. Viking Dodge, Inc.
, 982 F. Supp. 1296 (N.D. Ill. 1997).  Plaintiff's counsel cited cases decided under the Fair Debt Collection Practices Act (a related consumer protection law) that apply an unsophisticated consumer standard.  
E.g.
, 
Gammon v. G.C. Services
, 27 F.3d 1254 (7th Cir. 1994).  Federal courts have often stated that the TILA was enacted primarily to aid the unsophisticated consumer.  
E.g.
, 
Thomka v. A.Z. Chevrolet, Inc.
, 619 F.2d 246 (3d Cir. 1980).  In the absence of a Supreme Court ruling on the standard for evaluating TILA disclosures, plaintiff's counsel's argument appears to have been in good faith.  The majority opinion does not contend that the TILA and Illinois Consumer Fraud and Deceptive Business Practices Act would necessarily fail under the lower standard.

4:  
Green v. The Limited
, No. 95-M3-5136 (Cir. Ct. Cook Co., Aug. 21, 1996), and  
Latona v. Service Merchandise Co.
, No. 96-CH-2438 (Cir. Ct. Cook Co., Nov. 8, 1996) were both transfers and 
partial
 dismissals of class allegations, based on the relationship between the putative class representative and counsel.  The partial summary judgments in 
Latona v. Carson Pirie Scott & Co.
, No. 96 C 2119 (N.D. Ill., March 7, 1997), and 
Griesz v. Household Bank
, 8 F. Supp. 2d 1031 (N.D. Ill. 1998), 
aff'd
 176 F.2d 1012 (7th Cir. 1999) did not encompass all of the types of claims asserted in this case.  
Campobasso v. Circuit City Stores, Inc.
, No. 95-M-35135 (Cir. Ct.  Cook Co., May 5, 1998) involved a dismissal based on section 2-603 which, as noted above, is not automatically sanctionable under Rule 137.